**CASINO VENTURES, Plaintiff,**

**v.**

**Robert M. STEWART, Sr. in his Official Capacity as Chief of the State Law Enforcement Division, and Charles M. Condon, in his Official Capacity as Attorney General for the State of South Carolina, Defendants.**

**No. 2:98–1923–18.**

United States District Court,
D. South Carolina,
Charleston Division.

Oct. 16, 1998.

Edward A. Frazier, Columbia, SC, for Plaintiff.

Nathan Kaminski, Jr., Columbia, SC, for Defendant.

**ORDER**

NORTON, District Judge.

*Oh, we got trouble—*
*Right here in Georgetown County.*
*We've surely got trouble—*
*Right here in Georgetown County.*
*Oh yes we got trouble here,*
*We got big, big trouble.*
*With a capital "T"—*
*And that rhymes with "G"*
*And that stands for gambling.*[1]

This case arises out of Plaintiff's intention to operate a "day cruise" or "cruise to no-

---

**1.** Adapted from Meredith Willson, *Ya Got Trouble* as performed in the Broadway musical, *The Music Man* (1957). With this song, Harold, a main character in the play, warned the River City townspeople of the potential trouble they faced with the recently opened pool hall. The court apologizes to Meredith Willson for the liberties taken with his song.

where" business in Georgetown County, South Carolina. After denying Plaintiff's motion for a preliminary injunction, this court held a bench trial on September 14, 1998. At the conclusion of the trial and in accordance with Fed.R.Civ.P. 52(a), this court now makes the following findings of fact and conclusions of law.

## I. BACKGROUND

Plaintiff filed a declaratory judgment action and a motion for a preliminary injunction and supporting memorandum on July 1, 1998. Defendants filed a motion to dismiss and a motion in opposition to Plaintiff's request for a preliminary injunction on July 10, 1998. Both parties argued their positions at a hearing on July 13, 1998. By order dated July 21, 1998, this court denied Plaintiff's motion.

Plaintiff operates a day cruise business in Mayport, Florida. Day cruises or "cruises to nowhere" are voyages that start and finish in the same port without any stops. The main purpose of these cruises is to offer casino style gambling to passengers once the vessel sails beyond a state's three mile territorial waters.

Plaintiff desires to begin an operation similar to its Florida business in Georgetown County, South Carolina. Plaintiff seeks an order from this court declaring its right to legally operate a day cruise business in South Carolina. Plaintiff further requests that this court enjoin Defendants from arresting any of its officers, agents, or employees or from confiscating any of Plaintiff's equipment when the Plaintiff commences business in South Carolina.

## II. FINDINGS OF FACT

Pursuant to the joint stipulation of the parties, this court makes the following findings of fact.

1. Plaintiff intends to operate day cruises that would begin and end within South Carolina territory, which includes its three mile territorial waters, as shown on NOAA Map # 11535.

2. A day cruise is a cruise that begins and ends at the same port and does not make any intervening stops to disembark passengers.

3. Once the day cruise is beyond South Carolina territory, Plaintiff would offer gambling as one of the amenities for its passengers. To offer this amenity, Plaintiff would be possessing and transporting within South Carolina territory gambling equipment of the following type: (a) Black Jack Tables; (b) Craps Tables; (c) Roulette Wheel; (d) Poker Tables; and (e) Slot Machines.

4. Plaintiff is authorized to do business in South Carolina.

5. Dewayne Williams, the sole shareholder of Plaintiff, has paid for an option to lease dock and shore facilities, including parking, in South Carolina. In the event that Plaintiff is permitted to begin its day cruise operation in South Carolina, Dewayne Williams or Plaintiff may exercise the option to lease the dock and shore facilities. Plaintiff has renovated its ship and otherwise prepared for operations.

6. Plaintiff has registered for Calendar Year 1998 with the Department of Justice under the Johnson Act.

7. South Carolina has not enacted a statute that references the Johnson Act.

8. Defendants intend to prohibit Plaintiff from operating its business by threatening to enforce one or more of the following South Carolina statutes: S.C.Code Ann § 12–21–2710; S.C.Code Ann. § 12–21–2712; S.C.Code Ann. § 16–19–10; S.C.Code Ann. § 16–19–20; S.C.Code Ann. § 16–19–30; S.C.Code Ann. § 16–19–40; S.C.Code Ann. § 16–19–50; S.C.Code Ann. § 16–19–120; and S.C.Code Ann. § 16–19–130.

## III. CONCLUSIONS OF LAW

*Oh, we got trouble—*
*Right here in Georgetown County.*
*We've surely got trouble—*
*Right here in Georgetown County.*
*Oh yes we got trouble here,*
*We got big, big trouble.*
*With a capital "T"—*
*And that rhymes with "C"*
*And that stands for Congress.*

## A. THE JOHNSON ACT: 15 U.S.C. § 1175.

Congress enacted amendments to 15 U.S.C. § 1175 in 1992. The 1992 amendments created an exception to then existing prohibitions on possession and use of gambling devices on U.S. flag ships. Under the exception, it is lawful to *transport or possess,* on a voyage, a gambling device that is "within the boundaries of any State or possession of the United States" if the *use* of the gambling device on a portion of the voyage *is not within the boundaries of any State* or possession of the United States and the device remains on board while the vessel is within such boundaries. 15 U.S.C. § 1175(b)(1). Congress further provided that the repair, transport, possession, or use of a gambling device on a vessel that is not within the boundaries of any State or possession of the United States is prohibited "if the State or possession of the United States in which the voyage or segment begins and ends has enacted a statute the terms of which prohibit that repair or use on that voyage or segment." 15 U.S.C. § 1175(b)(2)(A). Accordingly, any state that "has enacted" a statute that prohibits the repair or use of gambling equipment on voyages that begin and end in the same state without any intervening stops may prohibit the type of business Plaintiff proposes. *See Id.*

█ Under the express language of § 1175, Plaintiff has the right to operate day cruises from ports in South Carolina unless South Carolina has opted out of the statute. *Id.* The parties agree that South Carolina has not enacted a statute that references the Johnson Act. Additionally, none of the pre-existing statutes on which Defendants rely[2] reference the Johnson Act or contain a prohibition on the use of gambling devices on a voyage or segment of a voyage as set forth in section 1175(b)(2)(A) and (B). Under the plain language of § 1175, Plaintiff may operate his business in South Carolina.

*Oh, we got trouble—*
*Right here in Georgetown County.*
*We've surely got trouble—*

*Right here in Georgetown County.*
*Oh yes we got trouble here,*
*We got big, big trouble.*
*With a capital "T"—*
*And that rhymes with "P"*
*And that stands for precedent.*

## B. FOURTH CIRCUIT PRECEDENT

Statutory interpretation begins with the language of the statute. *Randall v. Loftsgaarden,* 478 U.S. 647, 656, 106 S.Ct. 3143, 92 L.Ed.2d 525 (1986). Faced with interpreting the "has enacted" language of the Johnson Act before its 1992 amendments, the Fourth Circuit concluded that "[s]ince no state could possibly exempt itself from the prohibition of the Johnson Act before its passage, the words 'has enacted' cannot reasonably be deemed to have contemplated prior existing state legislation." *North Beach Amusement Company v. United States,* 240 F.2d 729 (4th Cir.1957). As the Supreme Court recently noted, "identical words used in different parts of the same act are intended to have the same meaning." *Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561, 562, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). Because South Carolina has not enacted any legislation referencing the Johnson Act specifically or in substance, South Carolina has not "enacted a statute the terms of which prohibit" day cruises. Defendants' argument that existing South Carolina statutes effectively opt South Carolina out of § 1175 is contrary to the Fourth Circuit's decision in *North Beach.*

Defendants argue that despite *North Beach,* Congress only intended its 1992 amendments to the Johnson Act to lift existing federal prohibitions on gambling aboard U.S. flag ships. Defendants point to Hawaii and argue that the continued validity of Hawaii's pre–1992 prohibition of day cruises evidences Congress's intent to allow existing statutes to effectively opt a state out of the 1992 amendments to the Johnson Act.

---

**2.** Defendants assert that the following South Carolina statutes prohibit Plaintiff's possession of gambling devices: S.C.Code Ann § 12–21–2710; S.C.Code Ann. § 12–21–2712; S.C.Code Ann. § 16–19–10; S.C.Code Ann. § 16–19–20; S.C.Code Ann. § 16–19–30; S.C.Code Ann. § 16–19–40; S.C.Code Ann. § 16–19–50; S.C.Code Ann. § 16–19–120; and S .C.Code Ann. § 16–19–130.

Defendants' attempt to expand upon Hawaii's unique situation is misplaced. The 1992 amendments to the Johnson Act specifically reference Hawaii. 15 U.S.C. § 1175(b)(2)(C). There is no similar reference to South Carolina. Id. Moreover, South Carolina has no statute even remotely similar to Hawaii's statute. Compare Haw.Rev.Stat. § 712–1222.5 with S.C.Code Ann. § 12–21–2710; S.C.Code Ann. § 12–21–2712; S.C.Code Ann. § 16–19–10; S.C.Code Ann. § 16–19–20; S.C.Code Ann. § 16–19–30; S.C.Code Ann. § 16–19–40; S.C.Code Ann. § 16–19–50; S.C.Code Ann. § 16–19–120; and S.C.Code Ann. § 16–19–130 (noting Hawaii's specific reference to crafts that embark and disembark at the same port within the state's borders and the lack of any similar provision in any of South Carolina's statutes).

Because Congress's 1992 amendments to the Johnson Act do not mention South Carolina, and because none of South Carolina's existing gambling statutes are similar to Hawaii's statute, Hawaii and South Carolina are not analogous. Congress did not intend for South Carolina to get the special treatment that it afforded Hawaii. South Carolina's statutes generally prohibiting gambling do not prohibit the operation of day cruises.

> Oh, we got trouble—
> Right here in Georgetown County.
> We've surely got trouble—
> Right here in Georgetown County.
> Oh yes we got trouble here,
> We got big, big trouble.
> With a capital "T"—
> And that rhymes with "C"
> And that stands for coastal states.

## C. COASTAL STATES

### 1. CALIFORNIA

Immediately after the adoption of the 1992 amendments to the Johnson Act, California enacted legislation to opt out of the amendments. See Cal.Penal Code § 11319. The California legislature specifically enacted section 11319 to meet the narrow exception of the 1992 Johnson Act amendments. The Legislative Intent comment to California's statue reads:

> SECTION 1. It is the intent of the Legislature in enacting this bill to reinforce long-standing statutory prohibitions against gambling ships that operate in California waters or from California ports. Consistent with these prohibitions under existing law … it is the intent of the Legislature to reiterate that gambling activities … are prohibited on craft where voyages begin and end in waters of this state, **consistent with the standards specified in Public Law No. 102–251, Sec. 202(b)(1)(2)(A) (15 U.S.C. 1175)**. Therefore, this legislation buttresses current law that prohibits gambling activities on so-called "voyages to nowhere," that are conducted entirely intrastate and in California waters.

Cal.Penal Code § 11319. Like South Carolina, California had existing gambling statutes prior to Congress's 1992 amendments to the Johnson Act. When adopting the 1992 amendments, Congress afforded California's existing statutes the same recognition as South Carolina's existing statutes: none. Accordingly, California lawmakers acted swiftly to prevent the day cruise industry from establishing businesses in California. California adopted a simple, short statute to meet the narrowly drawn exception of 15 U.S.C. § 1175. South Carolina lawmakers have yet to take similar measures to opt out of the 1992 amendments to the Johnson Act.

### 2. FLORIDA

Defendants cite Butterworth v. Chances Casino Cruises, Case No. 97–846–CIV–J–20 (M.D.Fla. July 14, 1997), to support their argument. Butterworth is irrelevant to Defendants' position. In Butterworth, the Florida Attorney General filed a nuisance action in Florida State Court against a day cruise operator. The Defendant removed the case to federal court alleging that the court had federal question jurisdiction over the claim. As is the practice in removed cases, the court looked to the face of the complaint to evaluate its jurisdiction. See 28 U.S.C. § 1331; Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Lacking jurisdiction, the federal court remanded the case to the Florida state court. The only determination made by the Butterworth court was that it lacked jurisdiction to hear the case; all other references to the Johnson Act were dicta at best.

On remand, the Florida state court, found that the Johnson Act

"legislated an end to discrimination between Registered U.S. vessels and vessels registered under foreign flags. Congress felt that such distinctions were discriminatory and should be eliminated. It did so under the 1992 amendments to the *JOHNSON ACT* (*15 USCA*). In doing so it did allow the states to 'opt out' of the exemption by regulating the 'cruise to nowhere industry,' if the individual states desired to do so. The provision did not adopt existing proscriptions but indicated each state must pass legislation to avoid the exemption for cruise ships carrying gambling equipment operating under U.S. Flag registration."

*Butterworth v. Chances Casino Cruises, Inc.*, CA 97–1088 (Fla.Cir.Ct. July 23, 1997), at 1. The Florida state court continued that "[t]he State of Florida chose NOT to opt out of the provisions of the exemption by allowing regulatory legislation to die in committee in both houses of the Florida Legislature.... Thus, the State of Florida chose not to 'opt out' of the U.S. Flag registration exemption by allowing gambling apparatus on such 'cruise to nowhere' vessels." After being remanded, *Butterworth* supports Plaintiff's position.

### 3. GEORGIA

The Attorney General of Georgia has concluded that to escape the effect of the 1992 amendments to the Johnson Act, Georgia must pass specific legislation to opt out of the amendments. Georgia Unofficial Att'y Gen. Op. No. U92–20. The question presented to the Georgia Attorney General regarded the "[a]pplicability of Georgia's gambling and related statutes to the use and possession of gambling devices on vessels operating cruises to nowhere from ports located in Chatham County, Georgia." The Georgia Attorney General concluded as follows:

Having legislated a general rule and exception, it is my view that unless Georgia has "enacted a statute the terms of which prohibit that repair, or use on that voyage or segment" of a voyage, the Johnson Act amendments would preempt any contrary or inconsistent Georgia law....

Georgia's gambling device statute does not expressly contemplate carriage of the devices on either foreign or American flagged vessels. It has no language which applies to the repair, possession or use of gambling devices, on voyages beginning and ending in Georgia. Since 15 U.S.C. § 1175(b)(2)(A) requires specific state legislation to remove the state from the Act's expansive exception, I must conclude that O.C.G.A. § 16–12–24(a) cannot be enforced in the circumstances contemplated by the Johnson Act as amended. To permit enforcement of O.C.G.A. § 16–12–24's prohibitions, additional legislation would be necessary.

Similarly, other statutes, such as O.C.G.A. § 16–12–23 (keeping a gambling place), O.C.G.A. § 16–12–22 (commercial gambling) and O.C .G.A. § 16–12–26 (advertising commercial gambling) also appear to be unenforceable under these circumstances by virtue of this congressional preemption. Additional legislation would be necessary to make the underlying activities unlawful before these peripheral statutes could be enforced.

In conclusion, it is my unofficial opinion that the 1992 amendments to the Johnson Act (15 U.S.C. § 1175) have preempted Georgia's statute prohibiting the possession of gambling devices (O.C.G.A. § 16–12–24) as applied to foreign or U.S. registered vessels where all gambling activity takes place beyond the state's three-mile territorial limits, and the gambling devices remain on board when the vessel is in a Georgia port. However, the provisions of the Johnson Act amendments permit the state to enact future legislation to prohibit the repair or use of such devices on vessels beginning and ending voyages in Georgia ports.

This informal opinion from Georgia's Attorney General supports Plaintiff's position.

### 4. OTHER COASTAL STATES

Since the bench trial, Plaintiff has submitted additional argument and documentation that suggest that New York, New Jersey, and Massachusetts have legislation pending that would opt those states out of § 1175. Because it was cumulative evidence submitted after trial, this court has not considered

this evidence in reaching the conclusions in this order. Such evidence would appear to suggest that the legislatures of other coastal states disagree with Defendants' arguments or that everyone is out of step but South Carolina.

## IV. PERMANENT INJUNCTION

 Plaintiff has requested a permanent injunction enjoining South Carolina law enforcement from enforcing certain of its criminal statutes against it. The standard for granting a permanent injunction is the same as that for preliminary relief, except that the court must consider plaintiff's actual success on the merits rather than his likelihood of success. *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542, (1987) (internal citation omitted). By order dated July 21, 1998 this court denied Plaintiff's motion for a preliminary injunction for the reasons stated therein.

During the bench trial, neither party addressed this court's July 21 denial of Plaintiff's motion for a preliminary injunction or Plaintiff's entitlement to a permanent injunction. Specifically, Plaintiff did not argue that it lacked an adequate remedy at law or that any damages it would suffer would be irreparable.

## V. CONCLUSION

*Oh, we got trouble—*
*Right here in Georgetown County.*
*We've surely got trouble—*
*Right here in Georgetown County.*
*Oh yes we got trouble here,*
*We got big, big trouble.*
*With a capital "T"—*
*And that rhymes with "sea"*
*Which is where the gambling will be.*

The South Carolina General Assembly could outlaw day cruises tomorrow and Plaintiff and any business like it would be lawfully put out of business. Until the South Carolina General Assembly enacts such legislation, it is

**ORDERED** that Plaintiff be awarded judgment on its first cause of action for declaratory judgment.

South Carolina has not enacted any statute opting out of the 1992 amendments to the Johnson Act and the statutes South Carolina adopted prior to the 1992 amendments to the Johnson Act, S.C.Code Ann § 12–21–2710; S.C.Code Ann. § 12–21–2712; S.C.Code Ann. § 16–19–10; S.C.Code Ann. § 16–19–20; S.C.Code Ann. § 16–19–30; S.C.Code Ann. § 16–19–40; S.C.Code Ann. § 16–19–50; S.C.Code Ann. § 16–19–120; and S.C.Code Ann. § 16–19–130, do not meet the criteria of the opt out provisions of 15 U.S.C. § 1175; and it is further

**ORDERED** that Plaintiff's request for a permanent injunction be **DENIED** without prejudice.

**AND IT IS SO ORDERED.**