556 S.E.2d 357

## STARDANCER CASINO, INC., Respondent,

v.

Robert M. STEWART, Sr., in his official capacity as Chief of the State Law Enforcement Division, Charles M. Condon, in his official capacity as Attorney General for the State of South Carolina, David P. Schwacke, in his official capacity as Solicitor for the Ninth Judicial Circuit, J. Al Cannon, Jr., in his official capacity as Sheriff for Charleston County, Gregory Hembree, in his official capacity as Solicitor for the Fifteenth Judicial Circuit, and Paul S. Goward, in his official capacity as Chief of the Horry County Police Department, Defendants,

of whom Robert M. Stewart, Sr., in his official capacity as Chief of the State Law Enforcement Division, Charles M. Condon, in his official capacity as Attorney General for the State of South Carolina, Gregory Hembree, in his official capacity as Solicitor for the Fifteenth Judicial Circuit, and Paul S. Goward, in his official capacity as Chief of the Horry County Police Department are Appellants.

No. 25335.

Supreme Court of South Carolina.

Heard Jan. 23, 2001.
Refiled Nov. 9, 2001.

378

Attorney General Charles M. Condon, Assistant Deputy Attorney General, Robert D. Cook, Senior Assistant Attorney General, Nathan Kaminski, Jr., Assistant Attorney General, Christie Newman Barrett, of Columbia, for appellants Robert M. Stewart, Charles M. Condon, and Gregory Hembree; and Sheryl S. Schelin and Janet Carter, of Conway, for appellant Paul S. Goward.

Saunders M. Bridges, Jr., of Florence, for respondent.

Justice PLEICONES.

This is an appeal from a circuit court order declaring that respondent's operation of a gambling "day cruise to nowhere" (day cruise) is not in violation of any of nine existing state criminal statutes.[1] We affirm.

### Facts

Respondent brought this declaratory judgment action to determine whether any of its activities are unlawful, and to obtain a permanent injunction against appellants (the State).[2] From a circuit court order declaring respondent's actions not unlawful but denying the injunction, the State appeals.

Respondent's day cruises begin and end at an Horry County port, and make no intervening stops. The United States flag vessel is equipped with gambling devices, including slot machines, blackjack tables, a roulette table, craps tables, and poker tables. Once the ship is beyond South Carolina's three mile territorial waters, gambling is permitted. Before the vessel reenters the territorial waters, the equipment is secured and unavailable for use. The equipment remains on the vessel at all times.

At least one other cruise line operates "day cruises" out of Charleston County. No prosecution has been made or threatened against the cruise line(s) operating out of Charleston,

---

1. S.C.Code Ann. §§ 16-19-10; 16-19-20; 16-19-30; 16-19-40; 16-19-50; 16-19-120; 16-19-130; 12-21-2710; and 12-21-2712.

2. The four appellants have been sued in their official capacities as state and county law enforcement officers and prosecutors. We will refer to them collectively as "The State."

while respondent has been threatened with criminal prosecution and seizure of its gambling devices.

The issue in this case is whether respondent's operations violate any **existing** state criminal statute.

### Federal Law

In order to explain our decision, we find it necessary to briefly review federal law in this area. Prior to 1992, federal law prohibited gambling on any United States flag ship. *See* 18 U.S.C § 1081 (2000)[3]; 15 U.S.C. § 1175(a).[4] The effect of these federal statutes was to put U.S. flag vessels at a competitive disadvantage in the passenger cruise industry, since the statutes did not prevent foreign flag vessels from offering gambling once the ship was beyond state territorial waters. *See Casino Ventures v. Stewart*, 183 F.3d 307 (4th Cir.1999), *cert. denied*, 528 U.S. 1077, 120 S.Ct. 793, 145 L.Ed.2d 669 (2000); *United States v. One Big Six Wheel*, 987 F.Supp. 169 (E.D.N.Y.1997).

In 1992, Congress amended § 1175 of the Johnson Act and created several exceptions to its general prohibition on the use or possession of any gambling device on a U.S. flag vessel. 15 U.S.C. § 1175(b). Pursuant to the amendment, the possession or transport of a gambling device within state territorial waters is not a violation of § 1175(a) if the device remains on board the vessel and is used only outside those territorial waters. § 1175(b)(1). Although the effect of this subsection was to permit the operation of "day cruises," another section provided states with a method for having "day cruises" remain a **federal** offense. § 1175(b)(2)(A). Thus, "day cruises" such as that operated by respondent may be subject to **federal** criminal prosecution under § 1175(a) if they begin and end in a state that "has enacted a statute the terms of which prohibit that use . . . ." *Id.*

■ As noted above, the issue in this case is whether respondent's operations violate any existing state criminal statute. The amendments to the Johnson Act do not preempt state laws prohibiting gambling and gambling devices, *Casino*

---

**3.** Part of the Gambling Ship Act, 18 U.S.C. §§ 1081–1084.

**4.** Part of the Johnson Act, 15 U.S.C. §§ 1171–1178.

*Ventures, supra,* and thus the Act has no direct bearing on the issues before the Court. However, while federal litigation pertaining to the meaning of the 1992 amendments was pending, the General Assembly amended several of the relevant state statutes. As explained below, the legislature's expression of intent in amending these statutes is relevant to the issue we decide today.

### State Statutes

This declaratory judgment action determined the applicability to respondent's activities of nine criminal statutes. The circuit court held four of the statutes were inapplicable to respondent's operations, and the State concedes that the three lottery statutes [5] and the bookmaking statute [6] are not implicated here. Two of the challenged statutes [7] provide for the seizure and destruction of *unlawful* gambling and gaming devices. Since we agree with the circuit court that respondent's possession and use of the devices on board its vessel are not unlawful under our substantive state statutes, we need not discuss these two seizure statutes.

We will explain below why respondent's operations do not violate the remaining statutes, S.C.Code Ann. §§ 16–19–40; 16–19–50; and § 12–21–2710.

### *§ 16–19–40*

Section 16–19–40 provides:

[From and after July 1, 2000,[8] this section reads as follows:]

**If any person shall play at any tavern, inn, store for the retailing of spirituous liquors or in any house used as a place of gaming, barn, kitchen, stable or other outhouse, street, highway, open wood, race field or open place** at (a) any game with cards or dice, (b) any gaming table, commonly called A, B, C, or E, O, or any gaming table known or distinguished by any other letters or by any figures, (c) any roley-poley table, (d) rouge et noir, (e) any faro bank (f) any

---

5. S.C.Code Ann. §§ 16–19–10; –20; and –30 (1985 and Supp.2000).

6. S.C.Code Ann. § 16–19–130 (1985).

7. S.C.Code Ann. § 12–21–2712 (Supp.2000) and § 16–19–120 (1985).

8. The amendment added subsection (g).

other table or bank of the same or the like kind under any denomination whatsoever or (g) any machine or device licensed pursuant to Section 12–21–2720 and used for gambling purposes, except the games of billiards, bowls, backgammon, chess, draughts, or whist when there is no betting on any such game of billiards, bowls, backgammon, chess, draughts, or whist or shall bet on the sides or hands of such as do game, upon being convicted thereof, before any magistrate, shall be imprisoned for a period of not over thirty days or fined not over one hundred dollars, **and every person so keeping such tavern, inn, retail store, public place, or house used as a place for gaming or such other house shall,** upon being convicted thereof, upon indictment, be imprisoned for a period not exceeding twelve months and forfeit a sum not exceeding two thousand dollars, for each and every offense. (emphasis added).

■ Section 16–19–40 has two clauses; the first prohibits the playing of games in certain locations and the second provides for punishment of the person "keeping" that location. Since it is a criminal statute, it must be construed strictly against the State and in favor of the defendant. *State v. Blackmon,* 304 S.C. 270, 403 S.E.2d 660 (1991) (strict construction of §§ 16–19–40 and 60). Ironically, the current statute does not cover respondent's video poker machines. The 1999 amendment added clause (g), which prohibits gambling on a machine **licensed** pursuant to § 12–21–2720. Video poker machines can no longer be licensed, and consequently are not covered by this statute.[9] *State v. Blackmon, supra.* At most, then, § 16–19–40 may apply to respondent's gaming tables. For the reasons given below, however, we conclude that it does not.

■ We first consider the portion of the statute that criminalizes the playing of certain games. The statute lists numerous specific locations at which the playing of games are prohibited. Since the list of prohibited locations does not include any term such as 'vessel,' 'ship,' or 'boat,' we hold that

---

**9.** Of course, possession or use of these machines, whether licensed or not, is absolutely prohibited under § 12–21–2710. *State v. 192 Coin-Operated Video Game Machines,* 338 S.C. 176, 525 S.E.2d 872 (2000). As explained later in this opinion, this statute does not apply to the machines located on respondent's ship.

the "playing" clause does not apply to respondent's operations. *See Brown v. State,* 343 S.C. 342, 540 S.E.2d 846 (2001) (where criminal statute very specifically lists locations covered, those not mentioned are excluded, applying maxim *expressio unius est exclusio alterius*).

Further, because a 'vessel or float' is not a prohibited location under the "playing" clause of § 16–19–40, but is a named location under the bookmaking statute, § 16–19–130, and because both statutes are part of the anti-gambling criminal statutes, we hold that the circuit court properly concluded this portion of the statute was inapplicable to respondent's operations. *See, e.g., Great Games, Inc. v. South Carolina Dep't of Revenue,* 339 S.C. 79, 529 S.E.2d 6 (2000) (statutes which are part of the same legislative scheme should be construed together).[10]

The portion of § 16–19–40 criminalizing the "keeping" of a gaming location uses slightly different language and arguably could be read to cover respondent's gaming table activities. While the "playing clause" lists specific locations, the "keeping clause" punishes "every person so keeping **such** tavern, inn, retail store, **public place,** or house used as a place for gaming...." (emphasis added) Respondent's vessel is a public place, and therefore seemingly covered under the literal language of this clause. Reading the statute as a whole, however, we conclude this 'public place' language is a refer-

---

**10.** The dissent ignores these principles of statutory construction and conflates the term "highway" in S.C. Const. art. XIV, § 4 with § 16–19–40 to conclude that the playing clause of the statute prohibits playing on navigable waters. As this Court has held, art. XIV, § 4 is "hardly anything more than a constitutional sanction of the common-law rights of the public in navigable waters." *State ex rel. Lyon v. Columbia Water Power Co.,* 82 S.C. 181, 190, 63 S.E. 884, 889 (1909). Nothing in § 16–19–40 obstructs the rights of the public to use navigable waters. Furthermore, when construing the term 'highway' in a statute, we view it in context. Here, the statute lists eight building structures, then 'street' and 'highway' and then three outdoor spaces. In our view, the term 'highway' in § 16–19–40 refers only to dirt highways and not water highways. *Compare Speights v. Colleton County,* 100 S.C. 304, 84 S.E. 873 (1915) (term 'highway' means only dirt, and not water, highway). Finally, we note that § 16–19–50 and § 12–21–2710 prohibit gambling and possession of gambling devices anywhere in the State (including nonnavigable waters), save on a vessel operating a "day cruise to nowhere."

ence back to the locations listed in the "playing" part of the statute. The "keeping" clause does not literally track the language of the "playing" clause, but does refer to "keeping **such**" a location. To read the "keeping" clause otherwise would result in "playing" being a criminal act in more and different locations than would "keeping." This, in turn, would lead to the absurd result that the person running the game could not be prosecuted if, for example, he was operating in a private street, field, or open wood while a person playing there would be prosecuted. The absurdity of this result is heightened by the fact the General Assembly has chosen to punish a "keeper" more harshly than a "player." *See Broadhurst v. City of Myrtle Beach Elec. Comm'n,* 342 S.C. 373, 537 S.E.2d 543 (2000) (no matter how plain statutory language is, it will be construed to avoid absurd result). Respondent's vessel is not a "public place" within the meaning of § 16–19–40.

We affirm the circuit court's conclusion that respondent's operations do not violate § 16–19–40.

### § 16–19–50 and § 12–21–2710

These two code sections criminalize actions of a "person who shall set up, keep, or use [games used for gambling purposes]" (§ 16–19–50) and make it unlawful "to keep on your premises" any devices used for gambling (§ 12–21–2710). In determining the applicability of these two statutes, we look at the General Assembly's expression of its legislative intent, as reflected in 1999 Act No. 125.

As noted above, in 1999 the Fourth Circuit held the Johnson Act did not preempt existing state gambling statutes. *Casino Ventures, supra.* This appellate decision reversed a district court opinion which had held that under the 1992 amendments to the Johnson Act, a state could ban "day cruises" only by enacting a statute which "opted out" of the Act by prohibiting the repair or use of gambling equipment on voyages. *Casino Ventures v. Stewart,* 23 F.Supp.2d 647 (D.S.C.1998).

While the appeal from that district court decision was pending before the Fourth Circuit, the General Assembly enacted comprehensive video poker legislation which, among other things, amended § 16–19–50 and § 12–21–2710.[11] 1999

---

**11.** This act also amended § 16–19–40 and § 12–21–2712. Section 12–21–2712 is a "seize and destroy" statute which applies only if the

Act No. 125. Act No. 125 contains an intent clause[12] which states in part:

The General Assembly by enactment of this act has no intent to enact any provision allowed by 15 U.S.C. 1175, commonly referred to as the Johnson Act, or to create any state enactment authorized by the Johnson Act.

The intent of the legislature is determined in light of "the overall climate in which the legislation was amended." *State v. Thrift*, 312 S.C. 282, 440 S.E.2d 341 (1994). At the time the legislature enacted Act No. 125, a federal district court had ruled "day cruises," like those operated by respondent, were permissible unless and until the legislature "opted out" of the Johnson Act. While this ruling was later found to be erroneous by the Fourth Circuit, we agree with the circuit court that "in light of the overall climate" then existing, this intent clause in Act No. 125 must be read to evince a legislative intent **not** to make the cruises unlawful.

The State offers no alternative construction of this intent clause, but instead argues "[w]hatever may have prompted the insertion of [this intent language in Act No. 125], the Fourth Circuit's subsequent decision made its purpose clear." We do not agree that subsequent action by a separate entity can either alter or elucidate legislative intent.

In light of this language in the act amending §§ 12–21–2710 and 16–19–50, we conclude the legislature did not intend them to prohibit "day cruises." Our conclusion that the General Assembly does not intend that any current statute be construed to ban "day cruises" is reinforced by its subsequent rejection of legislation which would have enacted new gaming statutes explicitly criminalizing them in 1999 and 2000. *See* House Bill 3002 (1999); Senate Bill 0002 (2000).[13]

---

devices are otherwise unlawful. As explained earlier, § 16–19–40 by its own terms does not apply to gaming tables located on respondent's vessel.

12. Section 22(B).

13. The dissent's reliance on *Whitner v. State*, 328 S.C. 1, 492 S.E.2d 777 (1997) is misplaced. *Whitner* holds that, "Generally, the legislature's subsequent acts 'cast no light on the intent of the legislature which enacted the statute being construed.'" (internal citation omitted).

Accordingly, we affirm the circuit court's conclusion that neither of these two "possession" statutes applies to respondent's conduct.

## Conclusion

We affirm the circuit court's ruling that respondent is not in violation of any state criminal statute. As noted above, the applicability of the three lottery statutes (§§ 16–19–10; 20; 30) and the bookmaking statute (§ 16–19–130) is not at issue here. Further, § 16–19–40 is inapplicable because respondent's vessel is not a prohibited location nor a public place as described therein. In light of the intent clause of 1999 Act No. 125, we agree with the circuit court that the legislature did not intend that either § 12–21–2710 or § 16–19–50 apply to "day cruise" operations. Further, we conclude that the General Assembly's rejection of statutes which would explicitly criminalize day cruises is evidence of its understanding that none of our existing statutes applies to such operations. Since the devices are not unlawful, they are not subject to seizure under either § 12–21–2712 or § 16–19–120.

Respondent is not subject to criminal prosecution under any **existing** criminal statute, and therefore we need not address its "selective enforcement" argument. We have construed these statutes as they apply to "day cruises to nowhere," that is, cruises on United States flag vessels operating out of a South Carolina port, making no intervening stops, and permitting gambling only when the ship is beyond the State's territorial waters.[14] Our decision rests on the intent of the Legislature expressed in 1999 Act No. 125: nothing in that Act is indicative of any intent to otherwise restrict the scope

---

Here, we are concerned with bills rejected in 1999 and 2000, during the first and second sessions of the 113th Session of the South Carolina General Assembly. This is the **same** General Assembly which enacted Act No. 125.

**14.** The dissent would mislead the casual reader to believe that we have legalized gambling devices on any contrivance capable of floating or use as water transportation, if controlled by a United States resident, citizen, or corporation. The only issue we decide is whether current law criminalizes the possession of gambling devices aboard U.S. flag vessels operating "day cruises to nowhere" out of South Carolina ports. The narrowness of our decision is the result of the issue before the Court, not disingenuousness on the part of the majority.

and application of laws criminalizing gambling activities in this State. Further, we emphasize that the General Assembly is free to enact legislation which effectively bans or makes a state crime "day cruise" operations such as that operated by respondent.

For the reasons given above, the order of the circuit court is **AFFIRMED.**

TOAL, C.J., MOORE and WALLER, JJ., concur.

BURNETT, J., dissenting in a separate opinion.

Justice BURNETT:

I respectfully dissent from the majority's conclusion respondent is not subject to criminal prosecution under any existing state statute. Respondent admits it possesses slot machines, blackjack tables, roulette tables, craps tables, and poker tables for use on "day cruises" or "cruises to nowhere." Possession of these items within the territorial waters of the State of South Carolina subjects respondent to the criminal laws of this state.

South Carolina Code Ann. § 16–19–40 (Supp.2000) provides: *[i]f any person shall play at any* tavern, inn, store for the retailing of spirituous liquors or in any house used as a place of gaming, barn, kitchen, stable or other outhouse, street, *highway,* open wood, race field or open place at (a) any game with cards or dice, (b) any gaming table commonly called A, B, C, or E, O, or any gaming table known or distinguished by any other letters or by any figures, (c) any roley-poley table, (d) rouge et noir, (e) any faro bank, (f) any other table or bank of the same or the like kind under any denomination whatsoever or (g) any machine or device licensed pursuant to Section 12–21–2720 and used for gambling purposes, except the games of billiards, bowls, backgammon, chess, draughts, or whist or shall bet on the sides or hands of such as do game, upon being convicted thereof, before any magistrate, shall be imprisoned for a period of not over thirty days or fined not over one hundred dollars, *and every person so keeping such* tavern, inn, retail store, *public place,* or house *used as a place for gaming* or such other house shall, upon being convicted thereof, upon indict-

ment, be imprisoned for a period not exceeding twelve months and forfeit a sum not exceeding two thousand dollars, for each and every offense.

(emphasis added).

Navigable waters are public highways. S.C. Const. art. XIV, § 4. Accordingly, gambling on a navigable water, a highway, violates § 16–19–40 and "keeping" gaming tables on navigable water of this State, a public place, violates § 16–19–40.

South Carolina Code Ann. § 16–19–50 (Supp.2000) makes it unlawful to

set up, keep, or use any (a) gaming table, commonly called A, B, C, or E, O, or any gaming table known or distinguished by any other letters or by any figures, (b) roley-poley table, (c) table to play at rouge et noir, (d) faro bank (e) any other gaming table or bank of the like kind or of any other kind for the purpose of gaming. . . .

Violators of this section are subject to fines and possible imprisonment. *Id.; see also* S.C.Code Ann. § 16–19–100 (1985).

South Carolina Code Ann. § 12–21–2710 (Supp.2000) makes it unlawful for any person

to *keep on his premises* or operate or permit to be kept on his premises or operated *within this State* any vending or slot machine, or any video game machine with a free play feature operated by a slot in which is deposited a coin or thing of value, or other device operated by a slot in which is deposited a coin or thing of value for the play of poker, blackjack, keno, lotto, bingo, or craps, or any machine or device licensed pursuant to Section 12–21–2720 and used for gambling or any punch board, pull board, or other device pertaining to games of chance of whatever name or kind, including those machines, boards, or other devices that display different pictures, words, or symbols, at different plays or different numbers, whether in words or figures or, which deposit tokens or coins at regular intervals or in varying numbers to the player or in the machine, but the provisions of this section do not extend to coin-operated nonpayout pin tables, in-line pin games, or to automatic weighing, measuring, musical, and vending machines which

are constructed as to give a certain uniform and fair return in value for each coin deposited and in which there is no element of chance.

(emphasis added). Respondent's gambling devices which are prohibited by § 12–21–2710 are subject to seizure, and, if a magistrate determines they violate § 12–21–2710 after a hearing, destruction. S.C.Code Ann. § 12–21–2712; *State v. 192 Coin–Operated Video Game Machines,* 338 S.C. 176, 525 S.E.2d 872 (2000).

Nowhere do these statutes provide exceptions for gambling devices or tables located on boats. In fact, § 16–19–40 specifically applies to gambling devices or tables located on boats. Yet despite the plain language of these statutes, the majority concludes the General Assembly did not intend them to apply to the gambling devices aboard vessels such as respondent's. The majority bases this conclusion on the "intent" clause contained in Act 125, which stated in part:

The General Assembly by enactment of this act has no intent to enact any provision allowed by 15 U.S.C. 1175, commonly referred to as the Johnson Act, or to create any state enactment authorized by the Johnson Act.

The majority acknowledges the Fourth Circuit Court of Appeals has explicitly held the Johnson Act does not preempt state gambling laws: "That federal enactment does not even apply to South Carolina's territorial waters—it leaves regulation of those waters to the state." *Casino Ventures v. Stewart,* 183 F.3d 307, 312 (4th Cir.1999), *rev'g* 23 F.Supp.2d 647 (D.S.C.1998), *cert. denied* 528 U.S. 1077, 120 S.Ct. 793, 145 L.Ed.2d 669 (2000). In fact, as the majority correctly explains, the Fourth Circuit held that any state enactment pursuant to the Johnson Act would determine whether gambling day cruises violate **federal** law, not state law. Thus, under *Casino Ventures,* the legislature's intent statement in Act 125 has *no impact on state law whatsoever.* Nevertheless, the majority concludes that, because the Fourth Circuit's opinion in *Casino Ventures* was not filed until four days after Act 125 was signed into law,[15] the General Assembly must have intended to exempt gambling day cruises from the

---

**15.** Act 125 was signed into law on July 2, 1999. *Casino Ventures* was filed on July 6, 1999.

general prohibition on possession of gambling tables or devices. In essence, the majority would have us infer this startling intent, in clear contravention of the plain language of these statutes, solely on the basis of an earlier erroneous construction of federal law by the District Court of South Carolina.

Moreover, the majority asserts its interpretation of the legislature's intent must be correct because subsequent legislation addressing "day cruises" has been rejected. Subsequent legislative acts, however, do not shed light on the intent of the legislature in enacting an earlier statute. *Whitner v. State*, 328 S.C. 1, 492 S.E.2d 777 (1997).

South Carolina's authority over gambling activity extends to the State's territorial waters. *See Casino Ventures*, 183 F.3d at 308. The criminal statutes of this state unequivocally make it unlawful to keep gambling tables or devices on boats and within this state. *See* §§ 16–19–40, 16–19–50 and 12–21–2710. We have held mere possession of gambling devices in this state—operational or inoperational, in storage or in use—violates state law. *State v. 192 Coin Operated Video Game Machines, supra.* If the General Assembly had intended to exempt vessels conducting day cruises from this prohibition, it would have done so in plain terms. *See Tilley v. Pacesetter*, 333 S.C. 33, 508 S.E.2d 16 (1998) (if legislature had intended certain result in statute it would have said so). The majority's ruling exempts casino day cruises from the general criminal laws of this state, without any clear expression of legislative intent to do so.

Finally, under the majority's decision, gambling devices may be kept solely on "United States flag ships" or "United States flag vessels" operating out of a South Carolina port. While the majority does not define "United States flag ship" or "United States flag vessel" it does refer to 18 U.S.C. § 1081 (2000) which defines "American vessel" as:

> any vessel documented or numbered under the laws of the United States; and includes *any vessel* which is neither documented or numbered under the laws of the United States nor documented under the laws of any foreign country, if such vessel is *owned by, chartered to, or otherwise controlled by one or more citizens or residents of the United*

*States or corporations organized under the laws of the United States or of any State.*

(emphasis added).

Pursuant to 18 U.S.C. § 1081, "vessel"

includes every kind of water ... craft ... or other contrivance used or capable of being used as a means of transportation on water ... as well as any ship, boat, barge, or other water craft or any structure capable of floating on the water.[16]

Applying the definitions referenced by the majority to its analysis, it is legal for gambling devices to be kept on any type of "contrivance ... capable of being used for transportation on water" or "structure capable of floating on the water" if controlled by a United States citizen or resident. The majority's opinion suggesting its decision is limited to a very narrow class of water craft (i.e., "United States flag ships" or "United States flag vessels") is disingenuous or, at best, misleading.

I would reverse the order of the circuit court and hold boats located within South Carolina and its territorial waters are subject ·to the same laws concerning gambling as any other premises in this state.

---

16. The Johnson Act does not refer to United States flag ships. While it refers to "vessels," it does not define the extent of water craft encompassed by that term.