23386

The STATE, Appellant v. Terry BLACKMON, Respondent.

(403 S.E. (2d) 660)

Supreme Court

*Attorney Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs* and *William Edgar Salter, III*, Columbia, and *Solicitor John R. Justice*, Chester, *for appellant.*

*Jack B. Swerling* and *Jennifer Kneece Shealy*, Columbia, *for respondent.*

*John M. Barton, Chief, Criminal Div., Asst. U.S. Atty.*, Columbia, *for amicus curiae, U.S.*

Heard March 4, 1991.

Decided April 22, 1991.

*Per Curiam:*

Respondent Terry Blackmon was indicted for operating a gambling house at his grocery store by disbursing money to players who accumulated free plays on electronic poker machines. We affirm the trial judge's finding that the indictment should be quashed because it fails to charge a valid offense.

## I. FACTS

Blackmon was indicted under S.C. Code Ann. § 16-19-40 (1976) for operating a gambling house at his grocery store. The indictment alleged that Blackmon engaged in unlawful gambling by disbursing money to players who accumulated free plays on electronic poker machines. Blackmon moved to quash the indictment on the ground that the allegations in the indictment did not constitute an offense. The trial judge agreed and granted Blackmon's motion to quash the indictment. The State appeals, arguing the trial judge abused his discretion in quashing the indictment because the activities alleged in the indictment constituted unlawful gambling in violation of Section 16-19-40.

At the hearing on Blackmon's motion to quash the indictment, the only witness who testified was a police officer who

supervised an undercover investigation of the alleged gambling at the grocery store. The officer testified that another undercover officer had witnessed players receiving money for the free plays which they had accumulated on the machines. As a result, the police obtained a search warrant and conducted a search of the grocery store. During the search, the police seized 11,566 playback vouchers, a membership book containing 248 names, and several videotapes which showed the procedure utilized in the alleged gambling transactions. The vouchers covered a time period from August, 1987, through December, 1988. The total amount of money represented by these vouchers was $358,336.75.

In addition, the officer introduced the statement of an individual who regularly played the machines. In his statement, the individual acknowledged that the grocery store "paid off" for the accumulated free plays. The statement also described the procedure used in paying players. When the player had accumulated free games and was ready to exchange the games for money, he called an employee over to fill out a voucher slip. The employee recorded the number of games won, the date, and the machine number, and the player signed the slip. The employee then gave the slip to the cashier, who confirmed the number of games won from a television monitor, cleared the poker machine, and gave the money to the employee to give to the player.

## II. DISCUSSION

The sole issue presented in this case is whether it is a violation of Section 16-19-40 for a person to disburse money to the player of a coin-operated nonpayout machine with a free play feature.[1] Section 16-19-40 provides as follows:

> If any person shall play at any tavern, inn, store for the retailing of spirituous liquors or in any house used as a place of gaming, barn, kitchen, stable or other outhouse, street, highway, open wood, race field or open place at (a) any game with cards or dice, (b) any gambling table, commonly called A, B, C, or E, O, or any gaming table known

---

[1] Both parties stipulated that the poker machines involved in this case were coin-operated nonpayout machines with free play features.

or distinguished by any other letters or by any figures, (c) any roley-poley table, (d) rouge et noir, (e) any faro bank or (f) any other table or bank of the same or the like kind under any denomination whatsoever, except the games of billiards, bowls, backgammon, chess, draughts or whist when there is no betting on any such game of billiards, bowls, backgammon, chess, draughts or whist, or shall bet on the sides or hands of such as do game, upon being convicted thereof, before any magistrate, shall be imprisoned for a period of not over thirty days or shall suffer a fine of not over one hundred dollars, and every person so keeping such tavern, inn, retail store, public place or house used as a place for gaming or such other house shall, upon being convicted thereof, upon indictment, be imprisoned for a period not exceeding twelve months and forfeit a sum not exceeding two thousand dollars, for each and every offense.

Although this statute seems to make the activity at Blackmon's store unlawful, S.C. Code § 16-19-60 (1990) provides that: "Nothing in [Section] 16-19-40 . . . shall extend to coin-operated nonpayment machines with a free play feature; provided, that nothing herein shall authorize the licensing, possession, or operation of any *machine* which disburses money to the player" (emphasis added). Blackmon argues that under the plain language of Section 16-19-60, his conduct does not constitute unlawful gambling as the machines themselves do not disburse money to the player, but rather, a person does. We agree.

It is well established that in interpreting a statute, the court's primary function is to ascertain the intention of the legislature. *First South Savings Bank, Inc. v. Gold Coast Assoc.*, — S.C. —, 390 S.E. (2d) 486 (Ct. App. 1990). When the terms of the statute are clear and unambiguous, the court must apply them according to their literal meaning. *Id.* Furthermore, in construing a statute, words must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation. *Bryant v. City of Charleston*, 295 S.C. 408, 368 S.E. (2d) 899 (1988). Finally, when a statute is penal in nature, it must be construed strictly against the State and in favor of the defen-

dant. *State v. Cutler*, 274 S.C. 376, 264 S.E. (2d) 420 (1980).

Here, Section 16-19-60 plainly states that coin-operated nonpayout machines with free play features are exempt from the reach of Section 16-19-40 as long as the machines themselves do not disburse money to the player. Since the poker machines involved in this case fall within this specific statutory exemption, Blackmon cannot be indicted under Section 16-19-40. Although this result appears anomalous, as it allows activity which seems to be unlawful gambling to go unpunished, it is nonetheless clear that this outcome reflects the intent of the legislature.[2] In light of the legislative resistance to these bills, we cannot conclude that the legislature intends for the human equivalent of the mechanical payout to be excluded from the exemption provided in Section 16-19-60. Further, it is not within our province to amend the law to resolve this inconsistency, rather, we leave to the legislature the resolution of this matter.

Thus, because we hold that Blackmon's conduct does not constitute an offense under Section 16-19-40, the trial judge did not abuse his discretion in granting the motion to quash the indictment. An indictment which does not charge a valid offense is clearly insufficient. The order of the trial judge quashing the indictment is

Affirmed.

---

[2] We take judicial notice of the fact that several bills have been proposed in the legislature which would eliminate this statutory exemption. *See* H.R. 3823, 108th Leg., (2d) Sess. (1989) (bill to repeal Section 16-19-60); H.R. 3867, 108th Leg., (2d) Sess. (1989) (bill to make it unlawful to have or to operate a machine for playing games which utilizes a deck of cards); H.R. 3104, 109th Leg., 1st Sess. (1991) (bill to repeal Section 16-19-60). However, despite its awareness that persons paying out money to players of these machines may escape prosecution under the provisions of Section 16-19-60, the legislature has, as of this date, refused to amend or repeal Section 16-19-60.