579 S.E.2d 289

**The STATE, Respondent,**

v.

**Franklin BENJAMIN, Petitioner.**

No. 25572.

Supreme Court of South Carolina.

Heard May 30, 2002.
Decided Jan. 13, 2003.
Reheard April 2, 2003.
Refiled April 7, 2003.

442

Katherine Carruth Link, and the South Carolina Office of Appellate Defense, all of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Walter M. Bailey, Jr., of Summerville, for Respondent.

Justice PLEICONES.

We granted certiorari to review a decision of the Court of Appeals holding that petitioner Benjamin was properly sentenced to life without the possibility of parole (LWOP) following an armed robbery conviction. *State v. Benjamin*, 341 S.C. 160, 533 S.E.2d 606 (Ct.App.2000). We affirm.

## FACTS

Benjamin and another individual robbed a Citgo convenience store. In the course of this armed robbery, a Citgo employee was shot and killed. Approximately four hours later, the two men robbed a Dodge's convenience store at

gunpoint. The charges arising from the Citgo incident were tried first, and Benjamin was convicted of murder and armed robbery. He received an LWOP sentence for murder and a thirty-year sentence for the armed robbery. *See State v. Benjamin,* 345 S.C. 470, 549 S.E.2d 258 (2001) (affirming these convictions and sentences). Both murder and armed robbery are defined as "most serious offenses" under the "two strikes" law. S.C.Code Ann. § 17–25–45(C)(1) (Supp.2001).

Following the Citgo trial, Benjamin was tried and convicted of armed robbery of the Dodge's convenience store. South Carolina Code Ann. § 17–25–45(A) (Supp.2001) provides "Notwithstanding any other provision of law ... upon a conviction for a most serious offense as defined by this section, a person must be sentenced to [LWOP] if that person has one or more prior convictions for: (1) a most serious offense...."

Benjamin was sentenced to LWOP for the armed robbery of the Dodge's store over his objection that the legislature did not intend that § 17–25–45(A) apply to convictions arising from a single crime spree. The Court of Appeals affirmed this sentence, and we granted certiorari to review that decision.

## ISSUE

Does S.C.Code Ann. § 17–25–45(A) apply so as to require an LWOP sentence for a subsequent conviction where all convictions arise from a single crime spree?

## ANALYSIS

Benjamin contends that the legislature did not intend that recidivist statutes such as § 17–25–45 apply to individuals who engage in a single continuous course of criminal conduct. In support of this contention, Benjamin points to an alleged ambiguity in § 17–25–45(F), and to S.C.Code Ann. § 17–25–50 (1985). We find no ambiguity in subsection (F), and find Benjamin's reliance on § 17–25–50 misplaced.

Section 17–25–45(F) provides:

For the purpose of determining a prior conviction under this section only, a prior conviction shall mean the defendant has been convicted of a most serious offense or a serious

offense, as may be applicable, on a separate occasion, prior to the instant adjudication.

Benjamin contends this section is ambiguous because it may be read to say either (1) that the commission of the prior most serious offense must have occurred on an earlier, separate occasion, or (2) that the conviction occurred "on a separate occasion," "prior to the instant adjudication."

We agree with the Court of Appeals that the language of § 17–25–45(F) is plain and unambiguous. Benjamin's first reading of the statute is simply unsupported by the statutory language. There is no reference in § 17–25–45(F) to the time of the prior offense's commission; rather, the only temporal reference is to the prior conviction. In clear and unambiguous language, this subsection defines a prior conviction for purposes of § 17–25–45 as a serious or most serious conviction, on a separate occasion, prior to the instant adjudication. *E.g.*, *State v. Blackmon*, 304 S.C. 270, 403 S.E.2d 660 (1991)(when statute's terms are clear and unambiguous, court must apply them literally).

At the time of the Dodge's armed robbery conviction, Benjamin had already been convicted, on a separate occasion, of the most serious offenses of murder and armed robbery that occurred at the Citgo. An LWOP sentence was, therefore, mandated by § 17–25–45(A).

■ Benjamin argues, however, that we must construe § 17–25–45 in light of § 17–25–50, which provides:

In determining the number of offenses for the purpose of imposition of sentence, the court shall treat as one offense any number of offenses which have been committed at times so closely connected in point of time that they may be considered as one offense, notwithstanding under the law they constitute separate and distinct offenses.

Our precedents required us to consider together both original recidivist statutes, § 17–25–50 and the predecessor to § 17–25–45, § 17–25–40. *See State v. Stewart*, 275 S.C. 447, 272 S.E.2d 628 (1980); *State v. Muldrow*, 259 S.C. 414, 192 S.E.2d 211 (1972). After these cases were decided, the legislature revised the statutory scheme. These pre–1982 precedents must nevertheless be considered in light of the current statutes.

When the General Assembly repealed § 17–25–40 [1] in 1982 and replaced it with § 17–25–45, it fundamentally altered the relationship between the recidivist statutes. The 1982 act explicitly provides "Notwithstanding any other provision of law [certain defendants] shall be sentenced to life in prison." 1982 Act No. 358, § 1.A. This language, specifically barring consideration of any other statute, has been retained in the current version of § 17–25–45. *See* § 17–25–45(A) and (B) (Supp.2001). That the legislature intends that § 17–25–45 be construed independent of any other statute is reinforced by the introductory language of subsections (E) and (F), both of which begin "For purposes of determining a prior conviction under this section only...." It is no longer necessary or appropriate to harmonize or reconcile § 17–25–45 and § 17–25–50 in light of the General Assembly's unmistakable instruction that § 17–25–45 be applied without regard to any other provision of law.[2]

## CONCLUSION

Benjamin was properly sentenced, pursuant to § 17–25–45(A), to LWOP for the armed robbery of the Dodge's convenience store. The decision of the Court of Appeals upholding that sentence is

**AFFIRMED.**

BURNETT, J., and Acting Justice EDWARD B. COTTINGHAM, concur.

WALLER, J., dissenting in a separate opinion in which MOORE, A.C.J., concurs.

Justice WALLER, dissenting.

I respectfully dissent. In my view, the Legislature did not intend that individuals, such as Benjamin, who commit several

---

1. 1982 Act No. 358, § 3.

2. To the extent the Court of Appeals reaches a different conclusion in *State v. Woody,* 345 S.C. 34, 545 S.E.2d 521 (Ct.App.2001), that decision is overruled.

crimes during a single, continuous crime spree be subjected to recidivist sentencing.[3]

A recidivist is "a habitual criminal. A criminal repeater. An incorrigible criminal. One who makes a trade of crime." *Black's Law Dictionary,* 1269 (6th Ed.1990). Recidivist legislation attempts to encourage offenders to stay out of trouble and punishes those who refuse to be deterred even after a conviction. *Commonwealth v. Eyster,* 401 Pa.Super. 477, 585 A.2d 1027, 1031 (1991). Recidivists are persons who continue to commit criminal, antisocial behavior after incarceration for an earlier offense. Recidivist statutes aim at punishing those who have shown they are incorrigible offenders. Shannon Thorne, *One Strike and You're Out: Double Counting and Dual Use Undermines the Purpose of California's Three–Strikes Law,* 34 U.S.F.L.Rev. 99 (1999). The purpose of requiring separate offenses is to ensure that those offenders being sentenced under the harsh provisions of a recidivist sentencing statute have not been classified as habitual offenders because of multiple convictions arising from a single criminal enterprise; it provides the state with some certainty that the offender has participated in multiple criminal trials and, despite these opportunities to understand the gravity of his behavior and abide by the law, has continued to engage in criminal conduct. Daniel Rogers, *People v. Furman and Three Strikes: Have the Traditional Goals of Recidivist Sentencing Been Sacrificed at The Altar of Public Passion?,* 20 Thomas Jefferson L.Rev. 139, 156 (Spring 1998).

In my view, the recidivist statute is aimed at career criminals, those who have been previously sentenced and then commit another crime, not at persons like Benjamin whose recidivist status is premised solely upon acts occurring within a four-hour period.

Contrary to the majority's contention, section 17–25–45 cannot, in my opinion, be read in isolation, but must be read in conjunction with section 17–25–50.

Section 17–25–50 provides:

---

**3.** The majority does not dispute that all of Benjamin's convictions arose from a single crime spree.

In determining the number of offenses for the purpose of imposition of sentence, the court **shall treat as one offense any number of offenses which have been committed at times so closely connected in point of time that they may be considered as one offense,** notwithstanding under the law they constitute separate and distinct offenses. (Emphasis supplied).

Section 17–25–45(A) provides, in part, "[n]otwithstanding any other provision of law ... upon a conviction for a most serious offense ..., a person must be sentenced to a term of imprisonment for life without the possibility of parole if that person has one or more prior convictions for ... (certain specified offenses)."

This Court has recognized that the predecessor to section 17–25–45 (17–25–40) and section 17–25–50 must be construed together. *See State v. Stewart,* 275 S.C. 447, 452, 272 S.E.2d 628, 631, n. 2 (1980) (recognizing that section 17–25–50 must be read in conjunction with section 17–25–40, the predecessor to section 17–25–45). *Accord State v. Burdette,* 335 S.C. 34, 515 S.E.2d 525 (1999)(recognizing section 17–25–40 is the predecessor to section 17–25–45). *See also State v. Muldrow,* 259 S.C. 414, 192 S.E.2d 211 (1972) (statute directing trial court to treat as one offense any number of offenses committed at times so closely connected in point of time that they may be considered as one offense is applicable only for purpose of sentencing under recidivist statute).

The majority points to the "notwithstanding any other provision of law" language of section 17–25–45(A), as an indication of legislative intent that it is no longer appropriate to construe sections 17–25–50 and 17–25–45 together. I disagree. In *State v. Woody,* 345 S.C. 34, 545 S.E.2d 521 (2001), the Court of Appeals held sections 17–25–45(F) and 17–25–50 could be reconciled such that both apply under the recidivist statute. The *Woody* court found "nothing to suggest section 17–25–45(F) somehow abrogates section 17–25–50." 345 S.C. at 37, 545 S.E.2d at 522. I agree.[4]

It is a well-accepted principle of statutory construction that statutes which are part of the same legislative scheme should be construed together. *Stardancer Casino, Inc. v. Stewart,*

---

4. The majority overrules *Woody;* I would affirm *Woody.*

347 S.C. 377, 556 S.E.2d 357 (2001). Statutes must be read as a whole and sections that are part of the same general statutory scheme must be construed together and each given effect, if reasonable. *Higgins v. State,* 307 S.C. 446, 449, 415 S.E.2d 799, 801 (1992). Furthermore, the court should not consider the particular clause being construed in isolation, but should read it in conjunction with the purpose of the whole statute and the policy of the law. *South Carolina Coastal Council v. South Carolina State Ethics Comm'n,* 306 S.C. 41, 44, 410 S.E.2d 245, 247 (1991). However plain the ordinary meaning of the words used in a statute may be, the courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the legislature or would defeat the plain legislative intention. *Ray Bell Constr. Co. v. School Dist. of Greenville County,* 331 S.C. 19, 501 S.E.2d 725 (1998).

As the Court did in *Stewart* and *Muldrow,* it is our duty to construe the statutes as a whole, and in Benjamin's favor. Doing so here, it is patent that Benjamin's single course of conduct should be treated as one offense. I would hold that Benjamin's four-hour crime-spree was simply not the type of recidivism the Legislature had in mind when it enacted section 17–25–45. *State v. Baker,* 310 S.C. 510, 512, 427 S.E.2d 670, 671–72 (1993)(statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers).

Moreover, to read section 17–25–45 in isolation, as the majority does here, permits the solicitor unfettered discretion to treat similarly situated defendants differently, based solely upon whether the solicitor elects to try the charges together, or separately, such that there is a "prior conviction." For example, if two defendants commit multiple offenses at one time, such as armed robbery, burglary, kidnapping, and murder, then whether each defendant is subject to a LWOP sentence depends entirely upon whether the solicitor elects to try the offenses separately, in which case there is a "prior conviction," or jointly, in which case there is not. Further, under this factual situation, one defendant may be subjected to a LWOP sentence while another, equally culpable defendant is not. Not only could such a scenario give rise to equal

protection violations, but, in my opinion, the Legislature clearly could not have intended such a result.[5]

I would hold that Benjamin is not eligible for an LWOP sentence for the robbery of Dodge's store; I would reverse the Court of Appeals' opinion.

MOORE, A.C.J., concurs.

---

5. Further evidence that the Legislature could not have intended such a result is found in S.C.Code Ann. § 24–21–640 (Supp.2001), governing circumstances warranting parole, which provides, in part, relative to granting parole to persons serving a second or subsequent conviction of a violent crime, "[p]rovided that where more than one included offense shall be committed within a one-day period or pursuant to one continuous course of conduct, such multiple offenses must be treated for purposes of this section as one offense." In my view, it would be incongruous to require the parole board to treat offenses committed within a 24 hour period as one offense for purposes of determining parole, while simultaneously holding that such offenses constitute multiple offenses for purposes of a life without parole sentence under section 17–25–45.