683 S.E.2d 280

**Pete S. BRYANT, Respondent,**

v.

**STATE of South Carolina, Petitioner.**

**No. 26719.**

Supreme Court of South Carolina.

Submitted Dec. 4, 2008.

Decided Sept. 14, 2009.

526

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Molly Crum, all of Columbia, for Petitioner.

Appellate Defender Robert M. Pachak, of South Carolina Commission on Indigent Defense, of Columbia, for Respondent.

Justice KITTREDGE.

We granted a writ of certiorari to review the grant of post-conviction relief (PCR) to Pete S. Bryant. On December 11, 1997, Bryant was convicted of armed robbery. Because Bryant had "prior conviction[s]" for armed robbery, he was sentenced to life without parole under section 17–25–45 of the South Carolina Code. The PCR court ruled that Bryant was not subject to a life without parole sentence and vacated the sentence. We reverse.

## I.

On December 27, 1996, at approximately 1:30 p.m., while armed with a pistol, Bryant and accomplices robbed the E–Z Shop BP Station in Orangeburg County, South Carolina. The next day, December 28, around 2:00 a.m., Bryant and accomplices committed a second armed robbery of a convenience store, this time in Colleton County. On December 29, shortly before midnight, Bryant and accomplices committed a third and final armed robbery in Jasper County. In early January

1997, Bryant was arrested and charged with three armed robberies.

Bryant pled guilty on July 8, 1997, to the armed robberies in Colleton and Jasper Counties and was sentenced to ten years in prison. On December 11, 1997, Bryant was convicted of the Orangeburg County armed robbery. The trial court sentenced Bryant to life without parole in light of its reading of sections 17–25–45 and 17–25–50 of the South Carolina Code. Trial counsel failed to challenge the court's construction of these statutes. Bryant's direct appeal was affirmed by the court of appeals. *State v. Bryant,* Op. No. 99–UP–654 (S.C. Ct.App. filed Dec. 21, 1999).

## II.

Bryant's initial application for PCR in 2000 was denied. In 2003, this Court held in *State v. Gordon,* 356 S.C. 143, 154, 588 S.E.2d 105, 111 (2003) that sections 17–25–45 and 17–25–50 "must be construed together in determining whether crimes committed at points close in time qualify for a recidivist sentence." The *Gordon* Court applied its decision retroactively. *Id.* at 155 n. 12, 588 S.E.2d at 111 n. 12.

Based on *Gordon,* Bryant filed the current PCR application in 2004 alleging ineffective assistance of counsel for failing to challenge the trial court's interpretation of sections 17–25–45(F) and 17–25–50. Bryant asserted at the PCR hearing that he was not a "career criminal," the armed robberies were not "isolated," and the robberies constituted "one string of events." The PCR court agreed and granted relief. The PCR court referenced *Gordon* and found that "all the Applicant's armed robbery offenses stemmed from a single criminal incident and were committed so closely in point of time as to be treated as one offense under S.C.Code Ann. Section 17–25–50 (Supp.2004)."

The State petitioned for a writ of certiorari, which we granted.

## III.

An appellate court "will reverse the PCR judge's decision when it is controlled by an error of law." *Pierce v.*

*State,* 338 S.C. 139, 145, 526 S.E.2d 222, 225 (2000). As this case involves statutory interpretation, we are presented with a question of law. *See Catawba Indian Tribe of S.C. v. State,* 372 S.C. 519, 524, 642 S.E.2d 751, 753 (2007) ("The issue of interpretation of a statute is a question of law for the court.").

■■■ "The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Mid–State Auto Auction of Lexington, Inc. v. Altman,* 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996). A statute should be read as a whole. *Id.* Further, "[s]tatutes which are part of the same legislative scheme should be read together." *Great Games, Inc. v. S.C. Dep't of Revenue,* 339 S.C. 79, 84, 529 S.E.2d 6, 8 (2000). "Unless there is something in the statute requiring a different interpretation, the words used in a statute must be given their ordinary meaning." *Mid–State Auto,* 324 S.C. at 69, 476 S.E.2d at 692.

## IV.

■■ The resolution of this case requires the Court to examine the legislative history of section 17–25–45, scrutinize the interplay between subsection (F) of section 17–25–45 and 17–25–50, and revisit *Gordon,* in light of the 2006 amendment to section 17–25–45(F).

For the reasons discussed below, we adhere to that part of *Gordon* holding sections 17–25–45(F) and 17–25–50 must be construed together, as section 17–25–50 operates in some situations to preclude the imposition of a life without parole sentence. 356 S.C. at 154, 588 S.E.2d at 111. We overrule *Gordon* insofar as its assessment of legislative intent concerning sections 17–25–45(F) and 17–25–50. 356 S.C. at 153–54, 588 S.E.2d at 110–11.

Specifically, referring to sections 17–25–45 and 17–25–50, a majority of this Court in *Gordon* stated "the recidivist statute is aimed at career criminals, those who have been previously sentenced and then commit another crime." 356 S.C. at 154, 588 S.E.2d at 111. *Gordon* further concluded that "[t]he purpose of requiring separate offenses is to ensure that those offenders being sentenced under the harsh provisions of a recidivist sentencing statute have not been classified as habitual offenders because of multiple convictions arising from a

single criminal enterprise." *Id.* at 154, 588 S.E.2d at 110–11 (quoting *State v. Benjamin,* 353 S.C. 441, 446, 579 S.E.2d 289, 291 (2003) (Waller, J., dissenting)).

## A.

### Section 17–25–45(F)

In the abstract, the policy rationale of the majority in *Gordon* is entirely defensible. But the desired policy of the *Gordon* majority is at odds with the unambiguous language in section 17–25–45(F). We do not make this finding lightly, for we recognize that a rigid application of section 17–25–45(F), standing alone, would lead to harsh results. Our perception of the potential for harsh results, however, serves as no license to construe the statute in a manner inconsistent with its clear language. Moreover, as addressed below, section 17–25–50 serves in most situations as a meaningful safeguard to the perceived unfair imposition of a life without parole sentence.

The view of the *Gordon* majority is, we believe, best understood by looking to the predecessor to section 17–25–45(F). In 1982, the Legislature repealed former section 17–25–40 of the South Carolina Code (1976) and replaced it with section 17–25–45. The statute listed certain offenses and provided that "any person who has three convictions" shall be sentenced to life in prison. S.C.Code Ann. § 17–25–45(*l*)(A) (1985). Of particular significance is the following provision:

[A] conviction shall be considered a second conviction only if the date of the commission of the second crime occurred subsequent to the imposition of the sentence for the first offense. A conviction shall be considered a third conviction only if the date of the commission of the third crime occurred subsequent to the imposition of the sentence for the second offense.

S.C.Code Ann. § 17–25–45(*l*)(C) (1985). The language of the 1982 statute fits well with policy notions set forth in *Gordon* of "habitual offenders," "multiple criminal trials," "multiple convictions," and "opportunities to understand the gravity of [one's] behavior." *Gordon,* 356 S.C. at 154, 588 S.E.2d at 111.

The 1995 amendments to section 17–25–45 abandoned the necessity that a subsequent offense for enhancement purposes

occur after imposition of the sentence for the prior offense. The same is true with amendments subsequent to 1995. Thus, while the *Gordon* rationale fits well with the 1982 legislation, those policy considerations are nowhere to be found in the prevailing statutory language, effective with the 1995 amendments.

In 1996, when Bryant committed the armed robberies, subsection (F) provided:

For the purpose of determining a prior conviction under this section only, a prior conviction shall mean the defendant has been convicted of a most serious or serious offense, as may be applicable, on a separate occasion, prior to the instant adjudication.

S.C.Code Ann. § 17–25–45(F) (Supp.1995).

As noted, this Court decided *Gordon* in 2003, making a determination of legislative intent as to subsection (F). In 2006, the Legislature amended section 17–25–45(F), and we believe the amendment was in response to *Gordon* on two fronts. First, the Legislature confirmed the correctness of *Gordon*'s holding that sections 17–25–45(F) and 17–25–50 must be construed together. Second, the Legislature repudiated *Gordon*'s reading of "a prior or previous conviction."

For the purpose of determining a prior or previous conviction under this section *and Section* 17–25–50, a prior or previous conviction shall mean the defendant has been convicted of a most serious or serious offense, as may be applicable, on a separate occasion, prior to the instant adjudication. *There is no requirement that the sentence for the prior or previous conviction must have been served or completed before a sentence of life without parole can be imposed under this section.*

S.C.Code Ann. § 17–25–45(F) (Supp.2008) (emphasis added).

Even in the absence of the second sentence added to subsection (F) in 2006, the statute provides that "a prior conviction shall mean the defendant has been convicted of a most serious or serious offense ... on a separate occasion, prior to the instant adjudication." S.C.Code Ann. § 17–25–45(F) (Supp.1995). Bryant's situation falls squarely within the triggering language of section 17–25–45(F), as it existed in 1996. The last sentence in subsection (F), added in 2006,

confirms the timing feature contained in the first sentence and repudiates *Gordon's* contrary interpretation.

## B.

### Section 17–25–50

■ Section 17–25–50 states:

In determining the number of offenses for the purpose of imposition of sentence, the court shall treat as one offense any number of offenses which have been committed at times so closely connected in point of time that they may be considered as one offense, notwithstanding under the law they constitute separate and distinct offenses.

■ While section 17–25–45(F) lends Bryant no support, the outcome of this case turns on the meaning of section 17–25–50's phrase "so closely connected in point of time that they may be considered as one offense." We acknowledge the "so closely connected in point of time" language in section 17–25–50 may become ambiguous as applied to certain situations. When construing statutes forming part of the same legislative scheme, we must examine the statutes together as a whole. Accordingly, when we read the unambiguous timing feature of "a prior conviction" under section 17–25–45(F) alongside section 17–25–50, we construe the language of section 17–25–50 to preclude a life without parole sentence when the multiple offenses are inextricably connected and share an immediate temporal proximity.

*State v. Woody*, 359 S.C. 1, 596 S.E.2d 907 (2004) illustrates a proper application of section 17–25–50 to preclude a life without parole sentence. Woody was convicted of second-degree burglary and had two prior convictions for armed robbery. *Id.* at 2, 596 S.E.2d at 907. The State sought to use both armed robbery convictions for enhancement purposes and a life without parole sentence. *Id.* The State's position was rejected because the armed robberies constituted, as a matter of law, one offense for purposes of section 17–25–50. *Id.* at 4, 596 S.E.2d at 908. The two armed robberies arose from a single incident at the same time and at the same location—a robbery of the store's clerk and the store itself. *Id.* at 2, 596 S.E.2d at 907.

In *Koon v. State*, 372 S.C. 531, 534, 643 S.E.2d 680, 682 (2007), this Court held a burglary committed on March 28th of a different building and a different location clearly constituted a separate offense from burglaries occurring two weeks prior on March 13th and March 14th. Due to this determination, it was not necessary for this Court to determine if the March 13th and March 14th burglaries were so closely connected to constitute one offense. Today we address the question left unanswered in *Koon*.

██ Our assessment of legislative intent—multiple offenses inextricably connected and sharing an immediate temporal proximity—will not provide a sure answer in every circumstance. Because the "so closely connected in point of time" language in section 17–25–50 may become ambiguous in some situations, it necessarily follows that section 17–25–50 does not lend itself to a bright-line rule. This Court so held in *Koon*. When a *genuine* ambiguity exists as a result of the proposed application of section 17–25–50 to a given situation, the rule of lenity requires that the doubt must be resolved in the defendant's favor. *State v. Blackmon*, 304 S.C. 270, 273, 403 S.E.2d 660, 662 (1991) (recognizing the settled rule that penal statutes must be strictly construed in the defendant's favor); *see also United States v. Shabani*, 513 U.S. 10, 17, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994) (observing that the rule of lenity "applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute"). *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980) ("[T]he 'touchstone' of the rule of lenity 'is statutory ambiguity.' ").

We find no ambiguity concerning the application of section 17–25–50 to Bryant's multiple armed robberies over several days. Bryant committed the three separate armed robberies on different days, at different locations, and the robberies involved different victims. These separate and distinct crimes over a several day period were not inextricably connected and did not share an immediate temporal proximity. Thus, Bryant's multiple armed robberies may not, as a matter of law, be considered "one offense" under section 17–25–50.

We emphasize that the determination of the number of prior convictions under section 17–25–45(F) must be made in con-

junction with the section 17–25–50 "one offense" safeguard. Cases involving the life without parole statutory scheme tend to raise the specter of two concerns. First, without the link between sections 17–25–45(F) and 17–25–50, troubling issues would arise from the *timing* of the adjudications when a defendant is arrested and charged with multiple serious offenses. Assuming a defendant is adjudicated guilty, disposing of all charges at the same time will avoid the application of section 17–25–45(F) as it relates to those charges and preclude a life without parole sentence. This is so even if the offenses, if adjudicated separately, would otherwise require a life without parole sentence. Conversely, disposing of the charges at different times would result in a life without parole sentence, unless the "one offense" provision of section 17–25–50 operates to foreclose a life sentence. It would be an unsettling policy that allows the state to manipulate the timing of the adjudications of guilt to pursue a life without parole sentence. Hence the importance of section 17–25–50's "one offense" safeguard.

This leads to the second concern. The language of section 17–25–50 is ambiguous when applied to certain situations. The imprecise language, "so closely connected in point of time that they may be considered as one offense," does not remove in every situation the potential for manipulating the timing of the adjudications. As with Bryant's multiple and separate armed robberies, the applicability or nonapplicability of section 17–25–50 may be readily apparent in most circumstances. Nevertheless, section 17–25–50's imprecise language will continue to generate uncertainty in some situations. Pending clarification from the Legislature, we earnestly attempt today to discern legislative intent.

### V.

In sum, we hold: (1) section 17–25–45 operates to trigger a life without parole sentence under the respective "two-strikes" and "three-strikes" provisions; (2) subsection (F) of section 17–25–45 sets forth a straightforward timing feature for identifying "a prior conviction;" and (3) section 17–25–50 is intended to serve as a legislatively sanctioned safeguard to ensure that a life without parole sentence is not imposed in cases where the multiple section 17–25–45 offenses are "so closely connected in point of time that they may be considered as one

offense," which we construe to mean the offenses are inextricably connected and share an immediate temporal proximity. In essence, what may be charged as two, three or more strikes under section 17–25–45 must be deemed "one-strike" for sentencing purposes under section 17–25–50 and, as a result, preclude a life without parole sentence. We believe this approach most closely hews to legislative intent based on what is admittedly imprecise statutory language.

We reverse the grant of PCR to Bryant.

**REVERSED.**

TOAL, C.J., concurs. PLEICONES, J., concurring in a separate opinion. BEATTY dissenting in a separate opinion in which WALLER, J., concurs.

Justice PLEICONES.

I concur in Justice Kittredge's decision to reverse the grant of post-conviction relief to respondent as I continue to believe that *State v. Benjamin*, 353 S.C. 441, 579 S.E.2d 289 (2003) was correctly decided and should apply to persons such as respondent who received an LWOP sentence pursuant to S.C.Code Ann. § 17–25–45 prior to the amendment of § 17–25–45(F), effective July 1, 2006. Further, I concur in his analysis of the impact of the 2006 amendment on the interplay between § 17–25–45 and S.C.Code Ann. § 17–25–50 on cases arising after the effective date of that amendment.

Justice BEATTY.

I disagree with the majority's analysis of the import of the Legislature's 2006 amendment to section 17–25–45(F). In my view, this amendment does not call into question the *Gordon* decision or its expression of legislative intent.

Section 17–25–45(F) recognizes *Gordon*'s requirement that it should be read together with section 17–25–50. To do so does not mean section 17–25–45(F) should be read to the exclusion of section 17–25–50; nor does it mean that section 17–25–50 acquired a new meaning or should be interpreted differently. These sections should be interpreted in a manner that gives effect to both. This may be accomplished by recognizing that section 17–25–45 focuses on how to *determine*

*a prior conviction* and section 17–25–50 focuses on how a conviction should be treated for *sentencing* purposes under certain circumstances.

The issue in this case is the same as in *Gordon;* that is the correct interpretation of section 17–25–50. Section 17–25–50 is unquestionably ambiguous in its use of the language "... committed at times so closely connected in point of time that they may be considered as one offense...." There is no requirement under section 17–25–50 that multiple offenses occur at the same time or in the same transaction. Yet, the majority injects a contemporaneous transactional requirement though none is found in either section 17–25–45(e) or section 17–25–50 and is unnecessary to effectuate the intent of either section.

The Legislature has had ample opportunity since *Gordon* to further clarify section 17–25–50 but has not done so. Thus, it would appear that *Gordon*'s interpretation of legislative intent is correct. The Legislature's focus is recidivism, and flexibility in interpreting "close in time" is necessary to give effect to legislative intent. In *Gordon*, the multiple offenses took place over a period of seven days. Here, the offenses took place during a period of fifty-four hours. Assuming an LWOP sentence is inappropriate under the facts of the instant case, Bryant would still be exposed to multiple, maximum consecutive sentences.

I would affirm.

WALLER, J., concurs.