**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Daisy Lynne Mimms, Appellant.

Appellate Case No. 2012-212931

———————

Appeal From Orangeburg County
Edgar W. Dickson, Circuit Court Judge

———————

Opinion No. 2014-UP-489
Heard June 4, 2014 – Filed July 30, 2014

———————

**AFFIRMED**

———————

Assistant Public Defender Mark Wise, of Orangeburg,
for Appellant.

Attorney General Alan McCrory Wilson and Senior
Assistant Deputy Attorney General Salley W. Elliott,
both of Columbia, for Respondent.

———————

**CURETON, A.J.:** Daisy Mimms appeals a circuit court order dismissing an appeal of her conviction in magistrate court for driving under the influence of alcohol or drugs (DUI). Mimms contends the circuit court erred in finding the magistrate court did not err in concluding: (1) there is no criminal intent required for the crime of DUI; and (2) veering off a roadway on one occasion was sufficient to show impaired driving. We affirm.

## FACTS

On October 23, 2010, Trooper Jamie Burris, while responding to a dispatch call of a driver driving erratically, conducted a traffic stop of Mimms because her car fit the description from dispatch and he observed her drive off the roadway. Burris "smelled an odor of alcohol" as he walked toward Mimms' car; therefore, he asked her to get out of the car. During the stop, Burris told Mimms, "You [were] weaving all over the roadway." Burris administered three parts of the Horizontal-Gaze Nystagmus (HGN) test to determine if Mimms was under the influence. Mimms was unable to keep her balance while performing the test and she did not successfully complete any portion of the HGN test. Based on Mimms' performance on the HGN test, Burris "did not feel comfortable" requiring Mimms to complete additional field sobriety tests. Additionally, based on her appearance and mannerisms, Burris determined Mimms was "clearly" under the influence of alcohol. Mimms admitted she consumed alcohol earlier that evening. Mimms also told Burris she had cancer and was undergoing chemotherapy treatment. Burris explained to Mimms the mixture of alcohol with her medication could have had a "synergy effect," impacting her level of intoxication.

Subsequently, the State charged Mimms with DUI, and she proceeded to a jury trial in magistrate court. After the State rested, Mimms moved for a directed verdict, arguing there was insufficient evidence of impaired driving because the evidence only showed she "ran off the road slightly." Further, Mimms maintained there was no evidence showing she weaved back and forth, drove into a ditch, or crossed the dotted line. As a second ground for a directed verdict, Mimms argued the State failed to prove an intentional act of violating the law. Mimms asserted the State was required to prove criminal intent and it failed to present such evidence. Mimms contended the evidence did not indicate she knew or had any reason to know she should not have drank a beer or there would be a "synergy effect" when she consumed the medication and alcohol. According to Mimms, there was no evidence she knew combining beer with her medication would impact her ability to drive. The magistrate denied the motion, finding there was sufficient

evidence of impaired driving and the DUI statute does not require the State to prove criminal intent. Mimms presented no defense.

Prior to instructing the jury, the magistrate reviewed the parties' proposed jury charges and determined she "[would] not instruct on criminal intent."[1] The jury convicted Mimms of DUI and the magistrate sentenced her to thirty days' imprisonment, suspended upon payment of a $997.00 fine. Mimms appealed to the circuit court, which dismissed her appeal with prejudice. This appeal followed.

## STANDARD OF REVIEW

Section 18-7-170 of the South Carolina Code (2014) articulates the standard of review to be applied by the circuit court in an appeal of a magistrate's judgment:

> Upon hearing the appeal the appellate court shall give judgment according to the justice of the case, without regard to technical errors and defects which do not affect the merits. In giving judgment the court may affirm or reverse the judgment of the court below, in whole or in part, as to any or all the parties and for errors of law or fact.

"In criminal appeals from magistrate or municipal court, the circuit court does not conduct a *de novo* review, but instead reviews for preserved error raised to it by appropriate exception. In reviewing criminal cases, this court may review errors of law only." *State v. Henderson*, 347 S.C. 455, 457, 556 S.E.2d 691, 692 (Ct. App. 2001) (internal citations omitted). "When there is any evidence, however slight, tending to prove the issues involved, [the appellate court] may not question a magistrate court's findings of fact that were approved by a circuit court on appeal." *Allendale Cnty. Sheriff's Office v. Two Chess Challenge II*, 361 S.C. 581, 585, 606 S.E.2d 471, 473 (2004). This court will presume that an affirmance by a circuit court of a magistrate's judgment was made upon the merits where the testimony is sufficient to sustain the judgment of the magistrate and there are no facts that show the affirmance was influenced by an error of law. *See Bowers v. Thomas*, 373 S.C. 240, 244, 644 S.E.2d 751, 753 (Ct. App. 2007). However, "[q]uestions of statutory interpretation are questions of law, which are subject to *de novo* review and which we are free to decide without any deference to the court below." *State v. Whitner*, 399 S.C. 547, 552, 732 S.E.2d 861, 863 (2012).

---

[1] The actual charge to the jury is not included in the record.

**LAW/ANALYSIS**

**I.      CRIMINAL INTENT**

Mimms argues the magistrate erred in failing to charge the jury on criminal intent as an element of DUI.  Although our DUI statute does not provide for any mental state, Mimms essentially argues a culpable mental state—intent—must be read into the statute.  Otherwise, according to Mimms, her right to due process of law would be violated.  We disagree.

Section 56-5-2930(A) of the South Carolina Code (Supp. 2013) provides:

> It is unlawful for a person to drive a motor vehicle within this State while under the influence of alcohol to the extent that the person's faculties to drive a motor vehicle are materially and appreciably impaired, under the influence of any other drug or a combination of other drugs or substances which cause impairment to the extent that the person's faculties to drive a motor vehicle are materially and appreciably impaired, or under the combined influence of alcohol and any other drug or drugs or substances which cause impairment to the extent that the person's faculties to drive a motor vehicle are materially and appreciably impaired.  A person who violates the provisions of this section is guilty of the offense of driving under the influence . . . .

In a trial for DUI, the state has to prove: (1) the defendant's ability to drive was materially and appreciably impaired; and (2) this impairment was caused by the use of drugs or alcohol.  *State v. Salisbury*, 343 S.C. 520, 524, 541 S.E.2d 247, 248-49 (2001).

> In offenses at common law, and under statutes which do not disclose a contrary legislative purpose, to constitute a crime, the act must be accompanied by a criminal intent, or by such negligence or indifference to duty or to consequences as is regarded by the law as equivalent to a criminal intent.

*State v. Ferguson*, 302 S.C. 269, 272, 395 S.E.2d 182, 183 (1990) (quoting *State v. Am. Agric. Chem. Co.*, 118 S.C. 333, 337, 110 S.E. 800, 802 (1922)). "Of course, the legislature, if it so chooses, may make an act or omission a crime regardless of fault." *Id.* at 271-72, 395 S.E.2d at 183; *see also State v. Manos*, 179 S.C. 45, 49-50, 183 S.E. 582, 584 (1936) ("The legislature, however, may forbid the doing of an act and make its commission criminal without regard to the intent or knowledge of the doer, and if such legislative intention appears the courts must give it effect, although the intent of the doer may have been innocent. This rule has been generally, although not quite universally, applied in the enforcement of statutes passed in aid of the police power of the state, where the word 'knowingly' or other apt words are not employed to indicate that knowledge is an essential element of the crime charged. The doing of the inhibited act constitutes the crime, and the moral turpitude or purity of the motive by which it was prompted, and knowledge or ignorance of its criminal character, are immaterial circumstances on the question of guilt." (quotation marks and citation omitted)). "These crimes are referred to commonly as 'strict liability' offenses. Whether an offense is a strict liability offense, and if not, what kind of criminal intent is required to satisfactorily show a commission of that offense, are questions of legislative intent." *Ferguson*, 302 S.C. at 272, 395 S.E.2d at 183. "Therefore, whether knowledge and intent are necessary elements of a statutory crime must be determined from the language of the statute, construed in the light of its purpose and design." *Guinyard v. State*, 260 S.C. 220, 227, 195 S.E.2d 392, 395 (1973).

"The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Bryant v. State*, 384 S.C. 525, 529, 683 S.E.2d 280, 282 (2009) (quoting *Mid-State Auto Auction of Lexington, Inc. v. Altman*, 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996)). "[W]hen a statute is penal in nature, it must be construed strictly against the State and in favor of the defendant." *State v. Blackmon*, 304 S.C. 270, 273, 403 S.E.2d 660, 662 (1991). The statutory language must be construed in light of the intended purpose of the statute. *Town of Mt. Pleasant v. Roberts*, 393 S.C. 332, 342, 713 S.E.2d 278, 283 (2011). "A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers." *State v. Sweat*, 386 S.C. 339, 350, 688 S.E.2d 569, 575 (2010) (quotation marks and citation omitted). "In interpreting a statute, the language of the statute must be read in a sense that harmonizes with its subject matter and accords with its general purpose." *Roberts*, 393 S.C. at 342, 713 S.E.2d at 283. Appellate courts will not construe a statute in a way which leads to an absurd result or renders it meaningless. *See Lancaster Cnty. Bar Ass'n v. S.C. Comm'n on Indigent Def.*, 380 S.C. 219, 222, 670 S.E.2d 371, 373 (2008) ("In construing a statute, this Court will reject an interpretation when

such an interpretation leads to an absurd result that could not have been intended by the legislature.").

"[D]riving of an automobile upon the public highway by a person while intoxicated is not only malum prohibitum, but malum in se." *State v. Long*, 186 S.C. 439, 446-47, 195 S.E. 624, 627 (1938).

> 'It is true the statute forbids it and provides a penalty, but this in no way determines whether it is only malum prohibitum. The purpose of the statute is to prevent accidents and preserve persons from injury, and the reason for it is that an intoxicated person has so befuddled and deranged and obscured his faculties of perception, judgment, and recognition of obligation toward his fellows as to be a menace in guiding an instrumentality so speedy and high-powered as a modern automobile. Such a man is barred from the highway because he has committed the wrong of getting drunk and thereby has rendered himself unfit and unsafe to propel and guide a vehicle capable of the speed of an express train and requiring its operator to be in possession of his faculties.'

*Id.* (quoting *People v. Townsend*, 183 N.W. 177, 179 (Mich. 1921)). Malum in se is defined as a "crime or an act that is inherently immoral." Blacks Law Dictionary 971 (7th ed. 1999). Malum prohibitum is defined as an "act that is a crime merely because it is prohibited by statute, although the act itself is not necessarily immoral." *Id.* "A corrupt purpose, a wicked intent to do evil, is indispensable to a conviction of a crime which is morally wrong. But no evil intent is essential to an offense which is a mere malum prohibitum." *State v. Moore*, 128 S.C. 192, 199, 122 S.E. 672, 674-75 (1924) (Cothran, J., concurring) (quotation marks and citation omitted).

> A simple purpose to do the act forbidden in violation of the statute is the only criminal intent requisite to a conviction of a statutory offense which is not malum in se. It follows that the only criminal requisite to a conviction of an offense created by statute, which is not malum in se, is the purpose to do the act in violation of the statute.

*Id.* at 199-200, 122 S.E. at 675 (quotation marks and citations omitted).

> [S]tatutes that forbid [DUI], such as the statute before us,[2] typically do not insist on purposeful, violent, and aggressive conduct; rather, they are, or are most nearly comparable to, crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all. The Government argues that 'the knowing nature of the conduct that produces intoxication combined with the inherent recklessness of the ensuing conduct more than suffices' to create an element of intent. And we agree with the Government that a drunk driver may very well drink on purpose. But this Court has said that, unlike the example crimes, the conduct for which the drunk driver is convicted (driving under the influence) need not be purposeful or deliberate.

*Begay v. United States*, 553 U.S. 137, 145 (2008) (citation omitted).

The DUI statute is devoid of any language regarding knowledge or intent. *See* S.C. Code Ann. § 56-5-2930(A). The statute is primarily a safety statute which seeks to punish an individual's drunken actions, not his or her intent. *See Long*, 186 S.C. at 446, 195 S.E. at 627 ("The purpose of the statute is to prevent accidents and preserve persons from injury . . . ."); *see also Case v. Com.*, 753 S.E.2d 860, 866 (Va. Ct. App. 2014) ("Thus[,] the concern is what could happen with an intoxicated individual behind the wheel, regardless of whether he intended to be there, turn on the car, or move the vehicle."). Therefore, we hold the legislature intended DUI to be a strict liability offense. *See Guinyard*, 260 S.C. at 227, 195 S.E.2d at 395 ("[W]hether knowledge and intent are necessary elements of a statutory crime must be determined from the language of the statute, *construed in the light of its purpose*

---

[2] "New Mexico's DUI statute makes it a crime (and a felony after three earlier convictions) to 'drive a vehicle within [the] state' if the driver 'is under the influence of intoxicating liquor' (or has an alcohol concentration of .08 or more in his blood or breath within three hours of having driven the vehicle resulting from 'alcohol consumed before or while driving the vehicle')." *Begay v. United States*, 553 U.S. 137, 141 (2008) (alteration in original) (quoting N.M. Stat. Ann §§ 66-8-102(A), (C)).

*and design*." (emphasis added)); *see also Case*, 753 S.E.2d at 866 ("Bearing these concerns . . . in mind, we conclude that there is no *mens rea* requirement in [the DUI statute].  As long as the Commonwealth proves beyond a reasonable doubt that an intoxicated individual 'operated' his vehicle, regardless of intent, he is guilty of [DUI].").

We note our supreme court has incorporated a mental state into criminal statutes lacking any requirement of intent, knowledge, recklessness, or negligence.  In *Ferguson*, 302 S.C. at 272-73, 395 S.E.2d at 184, our supreme court stated, "A reading of the entire statutory scheme convinces us that the legislature intended to place a mental state requirement in the offense contained in [the statute prohibiting manufacturing, distributing or dispensing a controlled substance]."  (footnote omitted).  Similarly, in *State v. Jefferies*, 316 S.C. 13, 19, 446 S.E.2d 427, 430-31 (1994), our supreme court stated, "We find that the *mens rea* of 'knowledge' is required under [the kidnapping statute]."  (footnote omitted).  However, in *Ferguson* and *Jefferies* the courts examined the relevant statute for a clear legislative purpose for imposing strict liability, which the courts did not find.  *See also* S.C. Code Ann. § 56-5-2920 (2006) (including the *mens rea* of recklessness, stating "[a]ny person who drives any vehicle in such a manner as to indicate either a wilful or wanton disregard for the safety of persons or property is guilty of reckless driving"); *cf. State v. Kirkland*, 282 S.C. 14, 16, 317 S.E.2d 444, 444 (1984) ("It is apparent that this section, in prohibiting sexual intercourse with any persons confined to a mental institution, imposes strict liability for its violation, as neither lack of consent, intent, nor knowledge were made elements of the offense." (internal quotation marks and citation omitted)); *State v. Jenkins*, 278 S.C. 219, 222, 294 S.E.2d 44, 45-46 (1982) ("By failing to include 'knowingly' or other apt words to indicate criminal intent or motive, we think the legislature intended that one who simply, without knowledge or intent that his act is criminal, fails to provide proper care and attention for a child or helpless person of whom he has legal custody, so that the life, health, and comfort of that child or helpless person is endangered or is likely to be endangered, violates . . . the Code.").

We find that under our DUI statute, there is a clear legislative purpose for imposing strict liability and public policy favors strict liability.  Moreover, the majority of jurisdictions, in cases involving the same or similar argument, hold DUI and related offenses are intended to impose liability without requiring a specific finding that the defendant possessed a culpable state of mind.[3]

---

[3] *See generally State v. Parker*, 666 P.2d 1083, 1084 (Ariz. Ct. App. 1983); *People v. Senn*, 824 P.2d 822, 824 (Colo. 1992); *Bodoh v. D.C. Bureau of Motor Vehicle*

Importantly, Mimms' interpretation would lead to an unreasonable and absurd result.  As the State correctly points out, under Mimms' reasoning, any person convicted under this statute could argue he or she did not "intend" to become intoxicated such that his or her faculties to drive a motor vehicle were materially and appreciably impaired.[4]  Furthermore, after ingesting the highly potent medication required for her illness, Mimms voluntarily decided to consume alcohol and drive a vehicle.  *See City of Milwaukee v. Johnston*, 124 N.W.2d 690, 693 (Wis. 1963) ("If one afflicted with [an illness] has a low tolerance to intoxicants or is more susceptible to be influenced by the consumption of intoxicants, it behooves such a person to imbibe less quantitatively to keep within his capacity than his friends who may enjoy greater consumption within their capacity because of their natural or acquired tolerance.  A person is chargeable not with knowledge of an objective quantitative standard of drinking but with the knowledge of his own limitations and capacity, and if he chooses to consume intoxicants and to operate a motor vehicle he does so at his own risk.").  Accordingly, we hold the circuit court did not err in dismissing Mimms' appeal for the magistrate court's failure to charge

---

*Servs.*, 377 A.2d 1135, 1137 (D.C. 1977); *Albaugh v. State*, 721 N.E.2d 1233, 1236 (Ind. 1999); *City of Wichita v. Hull*, 724 P.2d 699, 702 (Kan. Ct. App. 1986); *State v. McDole*, 734 P.2d 683, 686 (Mont. 1987); *State v. Glass*, 620 N.W.2d 146, 151 (N.D. 2000); *State v. Goding*, 489 A.2d 579, 580-81 (N.H. 1985); *State v. Fogarty*, 607 A.2d 624, 628 (N.J. 1992); *State v. Johnson*, 15 P.3d 1233, 1240 (N.M. 2000); *State v. Pistole*, 476 N.E.2d 365, 366 (Ohio 1984); *State v. Miller*, 788 P.2d 974, 977 (Or. 1990); *State v. Turner*, 953 S.W.2d 213, 215 (Tenn. Crim. App. 1996); *Farmer v. State*, 411 S.W.3d 901, 905 (Tex. Crim. App. 2013).

[4] Mimms' counsel seems to have conceded to the slippery slope that could result should this court determine the DUI statute requires the State to prove criminal intent.  While presenting arguments to the circuit court, Mimms' counsel stated:

> I'd submit to the [c]ourt that in certain circumstances the [c]ourt is going to make a determination.  Even when you say you didn't intend to get drunk[,] the facts of the case are not going to allow you to get the criminal intent statute. . . .  [I]f I represent somebody who's had five drinks, maybe even three drinks[,] I'm probably not going to ask for the criminal intent statute, because I think at that point looking at the kind of *mens rea* that exists, I think that's a reasonable issue.

 (italics added).

criminal intent as an element of the DUI statute. Our ruling does not apply to situations wherein a drug is involuntarily or unknowingly ingested while consuming alcohol.

## II.    IMPAIRED DRIVING

Mimms argues the magistrate erred in failing to grant her motion for a directed verdict because the State only produced evidence she veered off the roadway on one occasion. Consequently, according to Mimms, the circuit court erred in determining the magistrate did not err in finding "the mere veering off of a roadway on one occasion is sufficient to show impaired driving." We disagree.

"On an appeal from the trial court's denial of a motion for a directed verdict, the appellate court may only reverse the trial court if there is no evidence to support the trial court's ruling." *State v. Gaster*, 349 S.C. 545, 555, 564 S.E.2d 87, 92 (2002). "A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged." *State v. McKnight*, 352 S.C. 635, 642, 576 S.E.2d 168, 171 (2003). "If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, this Court must find the case was properly submitted to the jury." *State v. Horton*, 359 S.C. 555, 563, 598 S.E.2d 279, 283 (Ct. App. 2004).

Mimms correctly asserts the pertinent statute "does not penalize the act of leaving a lane of travel on one occasion" and that fact alone does not render her driving impaired. However, during oral argument before this court, Mimms conceded Trooper Burris had probable cause to initiate the stop. In fact, Mimms never argued to the magistrate court or circuit court Trooper Burris did not have probable cause to make the stop. The State produced a great deal of evidence of impaired driving uncovered after the initial stop. Specifically, the State submitted evidence: (1) Mimms' car matched the description of a car driving erratically; (2) while responding to the dispatch, Burris observed Mimms run off the roadway; (3) during the stop, Burris told Mimms "You [were] weaving all over the roadway"; (4) Burris "smelled an odor of alcohol" as he walked toward Mimms' car and inside her vehicle; (5) Mimms did not successfully complete the HGN test; (6) during the HGN test, Mimms was unable to keep her balance; (7) based on Mimms' performance on the HGN test, Burris "did not feel comfortable" requiring Mimms to complete additional field sobriety tests; and (8) Mimms' appearance and mannerisms indicated she was under the influence of alcohol. Therefore, viewing the evidence in the light most favorable to the State, the evidence supports the magistrate's submission of this case to the jury.

**CONCLUSION**

Accordingly, the circuit court's dismissal of the appeal is

**AFFIRMED.**

**HUFF and THOMAS, JJ., concur.**