JUSTICE JAMES :
**103 Darrell L. Goss was convicted of kidnapping, assault and battery with intent to kill (ABWIK), and armed robbery. In this post-conviction relief (PCR) matter, the PCR court denied relief, and the court of appeals affirmed. Goss v. State , Op. No. 2016-UP-382, 2016 WL 4013764 (S.C. Ct. App. filed July 27, 2016). We granted Goss's petition for a writ of certiorari to review the decision of the court of appeals. We remand to the circuit court for a de novo PCR hearing.
Facts and Procedural History
Goss was charged in connection with the armed robbery of Urban Wear, a clothing store in North Charleston. The store owner, Andy Ayazgok, reported that five unmasked black males entered the store through the main storefront door at about 7:30 p.m., just before closing time, and proceeded to beat him, tie him and his employee up, and flee after stealing merchandise and cash. Of the five assailants, Andy was able to identify only Joy Mack as one of the assailants. Goss and Mack were tried jointly. Andy did not identify Goss as a perpetrator but identified him as *374 having been in the store the week before the robbery.[1]
Sergeant Al Hallman was a member of the crime scene unit that processed the scene and was qualified by the trial court as an expert in fingerprint identification. He testified that when he arrived on the scene, he observed what he described as "wet" prints on the exterior of the glass storefront door; specifically, Sergeant Hallman testified the prints were a "simultaneous impression" of three fingers and a palm. The door from which the prints were lifted was the door through **104 which the perpetrators gained entry and was also the door used by customers. Sergeant Hallman testified the prints were wet from either sweat or some other substance, which indicated to him the prints were fresh. He waited until the prints were dry and lifted them for possible later comparison. Andy testified at trial that he customarily cleaned the inside and outside of the storefront door each morning, and he testified he did so when he opened the store on the morning of the robbery.
Within hours after the robbery, a man named Lorenzo Johnson advised lead detective O.J. Faison that petitioner Goss and his brother, Benjamin Goss, were two of the perpetrators. Detective Faison relayed this information to Sergeant Hallman. Hallman compared the prints he lifted from the storefront door to inked impressions from petitioner Goss; he testified the prints matched. After the prints were matched to Goss, law enforcement obtained a warrant to search Goss's residence and any vehicles on the premises. The warrant was executed at approximately 9:30 p.m. the night following the robbery. A .357 Magnum handgun with blood on the barrel was found in a car parked in the yard of the residence occupied by Goss and eight or nine other people, including several black males. DNA testing established the blood was Andy's. Clothing with tags was found in a bedroom in the residence, and Andy identified some of the clothing as being part of the merchandise stolen during the robbery.
Goss's mother, Thomasina Goss, was trial counsel's primary contact prior to trial because trial counsel had known her for many years and because Goss was in jail the entire twenty months before trial. She was the only defense witness called at trial and testified to the following: Goss lived in the house with her and eight other people, she bought the stolen clothing from some unidentified men in the street in front of her house on the same day law enforcement searched her home, she knew the clothes were likely stolen, she had never seen Goss drive or ride in the car in which the bloody gun was found, and everyone who lives in the house uses the bedroom in which the stolen clothing was found. The State impeached her with a shoplifting conviction and two convictions for giving false information to the police.
**105 As noted above, the jury found both Goss and Mack guilty as indicted; the trial court sentenced Goss to three concurrent twenty year sentences. The court of appeals affirmed Goss's convictions in State v. Goss , Op. No. 2011-UP-214, 2011 WL 11734325 (S.C. Ct. App. filed May 17, 2011). Goss subsequently commenced this action for PCR.
Goss testified at the PCR hearing he retained trial counsel two years before trial and was in jail that entire time. He further testified he met with trial counsel only once during that time and claimed that meeting was to discuss a plea offer. Goss claimed he tried to tell trial counsel of his innocence but trial counsel told him not to tell him anything because "whatever you tell me, I'm stuck with." This led to Goss cursing at trial counsel and telling him he did not want trial counsel to represent him. Goss testified he wrote trial counsel a letter apologizing for his conduct and that he did want trial counsel to represent him.
Goss testified that if he had been given the opportunity to properly consult with trial counsel before trial, he would have told trial counsel he was at his unborn child's baby shower during the time the robbery was committed. He claimed he would have given trial counsel the names of alibi witnesses.
*375 Goss also testified that during jury selection, he gave trial counsel the names of four witnesses he wanted trial counsel to have testify. These witnesses were Angelique Gadsden (the mother of his unborn child), Sha'ron Goss, Clifford Hartwell, and Benny Goss. Petitioner Goss claimed Sha'ron Goss, Gadsden, and Hartwell were present at trial. During jury qualification, the trial judge called the names of Angelique Gadsden and Clifford Hartwell as potential witnesses, and trial counsel corrected the trial judge's pronunciation of Gadsden's first name.
Goss testified his cousin Sha'ron would have testified that he-Sha'ron-bought the bloody gun the day after the robbery from one of the men selling clothes in the street. Goss testified Angelique Gadsden would have corroborated Thomasina Goss's testimony that she bought the clothes from the men in the street. According to Goss, his brother Clifford Hartwell would also have corroborated this testimony. Goss also testified his brother Benny Goss would have testified at **106 trial that he saw men selling clothes in the street and that Thomasina Goss and Sha'ron Goss bought some.
Sha'ron Goss, Gadsden, and Hartwell were all present at the PCR hearing and were offered as witnesses by PCR counsel. Instead of hearing their testimony, the PCR court decided, with the consent of the State and PCR counsel, to take "judicial notice" that all three would have testified at trial and would have corroborated Thomasina Goss's testimony about buying clothes from the men in the street. Again with the consent of the State and PCR counsel, the PCR court also took judicial notice that Sha'ron Goss would have testified at trial that he bought the bloody gun from one of those men the day after the robbery.[2] Bernard Godfrey (Goss's uncle), Felicia Henderson (Goss's friend), and Lucretia Douglas (Goss's friend) were also present at the PCR hearing and were offered as witnesses. Instead of hearing their testimony, the PCR court, with the consent of the State and PCR counsel, took judicial notice that they and Angelique Gadsden would have testified at trial that Goss was at the baby shower from 7:00 p.m. until 9:00 p.m. the evening of the robbery.[3]
Trial counsel testified Thomasina Goss never told him anything about an alibi defense or alibi witnesses and never told him that she could testify Goss was elsewhere at the time of the robbery. Trial counsel testified that the first time he heard about an alibi was after the case had been tried. The PCR court found trial counsel's testimony to be credible and found Goss's testimony to be not credible.
In its order denying relief, the PCR court found that even if these seven witnesses had testified at trial, their testimony would not have affected the outcome of the trial; in so finding, the PCR court concluded the credibility of these witnesses would have been too suspect in the jury's eyes because the **107 witnesses were friends and family members of Goss. The PCR court concluded trial counsel was not deficient for not presenting an alibi defense or eliciting testimony about Sha'ron buying the gun and putting it in the car. This conclusion was based upon trial counsel's testimony, which the PCR court found credible, that trial counsel did not learn of either the alibi defense or Sha'ron's testimony until after the trial.
After the PCR court denied relief, Goss appealed, and the court of appeals affirmed in an unpublished opinion. Goss v. State , Op. No. 2016-UP-382, 2016 WL 4013764 (S.C. Ct. App. filed July 27, 2016). This Court granted Goss's petition for a writ of certiorari.
Discussion
In a PCR proceeding, the PCR court's factual findings will be upheld if there is any probative evidence in the record to support those findings. Sellner v. State , 416 S.C. 606, 610, 787 S.E.2d 525, 527 (2016) ;
*376 Buckson v. State , 423 S.C. 313, 320, 815 S.E.2d 436, 440 (2018). The PCR court's evaluation of witness credibility is to be afforded great deference. Simuel v. State , 390 S.C. 267, 270, 701 S.E.2d 738, 739 (2010). Here, the PCR court reached certain factual conclusions that appear to be supported by probative evidence in the record. These conclusions were based primarily upon the PCR court's evaluation of the credibility of Goss and trial counsel. Again, the PCR court found Goss to be not credible and trial counsel to be credible.
Under normal circumstances, we would apply our deferential standard of review to these findings. However, here, several witnesses were present at the PCR hearing and were prepared to testify to certain facts and circumstances. Some of these facts and circumstances were pertinent to evidence Goss claims should have been presented to the trial jury. Some of these facts and circumstances may have been pertinent to the dynamic surrounding trial counsel's alleged deficient failure to interview these individuals and perhaps call them as witnesses at trial. Under ordinary circumstances, once the witnesses testified at the PCR hearing, the PCR court would normally make findings as to their credibility. Obviously, the PCR court's evaluation of witness credibility is a mental process.
It was error for the PCR court to take judicial notice of the witnesses' testimony and then conclude these witnesses would **108 not have been credible to a jury because of their relationships with Goss. We acknowledge PCR counsel did not object to this approach. However, under these unique circumstances, we are compelled to remand the matter to the PCR court for a de novo hearing. When a factfinder evaluates the credibility of witnesses, the mental process employed often requires the credibility evaluations to be based upon a consideration of all the evidence, not simply the parts the factfinder chooses to see and hear first-hand. Here, the PCR court's decision to take judicial notice of the substance of witnesses' testimony and then find those witnesses not credible diluted the process to the point where the PCR court's factual findings-and perhaps the legal conclusions arising from those factual findings-were based upon an incomplete consideration of all the evidence.
Based upon the foregoing, we REMAND this matter to the circuit court for a de novo PCR hearing. It will be incumbent upon Goss to secure the attendance of his witnesses for the de novo hearing, and Goss, trial counsel, and other pertinent witnesses may be presented for testimony by the parties. We emphasize the proceedings will be de novo, and neither party may rely upon testimony presented at the initial hearing which is the subject of this appeal.
BEATTY, C.J., KITTREDGE, HEARN and FEW, JJ., concur.

Andy's proffered trial testimony detailing his recollection of seeing Goss in the store the week before the robbery was that Goss was shoplifting and Andy ran him off. The trial court granted Goss's motion to exclude these details from Andy's testimony before the jury.

The record is unclear as to whether Benny Goss was present at the PCR hearing. The PCR court's order does not reflect the PCR court took judicial notice of his purported trial testimony.

Goss himself, not PCR counsel, objected to the PCR court not hearing the witnesses' testimony live. He stated, "I need it on the record for appeal purposes." However, the PCR court admonished Goss that the court taking judicial notice of the testimony was "better than a record" and that Goss should "let [PCR counsel] do his job."