# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Oshaun J. Robinson, Respondent,

v.

State of South Carolina, Petitioner.

Appellate Case No. 2020-001361

---

## ON WRIT OF CERTIORARI

---

Appeal From Greenville County
J. Mark Hayes, II, Circuit Court Judge

---

Opinion No. 6130
Heard February 11, 2025 – Filed January 14, 2026

---

## REVERSED

---

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, and Senior
Assistant Deputy Attorney General Melody Jane Brown,
all of Columbia, for Petitioner.

Tricia A. Blanchette, of Law Office of Tricia A.
Blanchette, LLC, of Leesville, for Respondent.

---

**VINSON, J.:** We issued a writ of certiorari to review the circuit court's grant of post-conviction relief (PCR) to Oshaun J. Robinson. The State argues the PCR court erred by finding plea counsel was ineffective for failing to advise Robinson

that a concurrent sentence for the offenses to which he was pleading guilty did not mean these offenses "merged" with Robinson's separate, prior trial convictions and that if these trial convictions were later reversed, such reversal would not affect his guilty plea convictions.  We reverse.

## FACTS AND PROCEDURAL HISTORY

In December 2007, Robinson was charged with a total of thirty-one offenses for incidents that occurred over the course of several non-consecutive days in November and December 2007.  The warrants alleged the offenses arose from incidents that occurred on November 21, December 2, 6, 8, 10, and 14.  In August 2008, a Greenville County Grand Jury indicted Robinson for armed robbery, assault and battery of a high and aggravated nature (ABHAN),[1] possession of a weapon during the commission of a violent crime, and conspiracy based on the December 10, 2007 incident.  The same grand jury indicted Robinson for armed robbery, assault and battery with intent to kill (ABWIK), conspiracy, and possession of a weapon during the commission of a violent crime based on the December 14, 2007 incident.

In January 2009,[2] Robinson and his codefendant, Kenneth Workman, proceeded to a jury trial on the charges arising from the December 10 incident, and the jury found them guilty of all charges.  The trial court sentenced Robinson to twenty-five years' imprisonment, consisting of twenty-five years for armed robbery, five years for conspiracy, five years for the weapon charge, and thirty days for assault and battery, to run concurrently.  Robinson appealed.

In March 2009, while his appeal of the trial convictions was pending, Robinson pled guilty, as indicted, to the charges arising from the December 14, 2007 incident.  The plea court sentenced him to twenty-five years' imprisonment, consisting of twenty-five years for armed robbery, twenty years for ABWIK, five years for conspiracy, and five years for the possession of a weapon during the commission of a violent crime, to run concurrently.

---

[1] Prior to trial, the State reduced the ABHAN charge to the lesser-included offense of assault and battery.

[2] Robinson and Workman were initially tried before a jury on December 1-2, 2008. However, the trial resulted in a mistrial after the jury failed to reach a unanimous verdict.

In January 2012, this court affirmed Robinson's trial convictions. *See State v. Robinson*, 2012-UP-042 (S.C. Ct. App. filed Jan. 25, 2012). Robinson then filed a PCR action challenging his trial convictions, which the PCR court denied following an evidentiary hearing. Robinson appealed. In April 2015, our supreme court reversed the PCR court's denial of relief and remanded the case for a new trial, finding trial counsel was ineffective for failing to object to an unconstitutionally coercive *Allen*[3] charge. *Workman v. State*, 412 S.C. 128, 771 S.E.2d 636 (2015) (per curiam).

Upon remand, Robinson pled guilty to the trial charges on May 16, 2016. The plea court sentenced him to fifteen years' imprisonment for armed robbery, five years for criminal conspiracy, five years for the weapons charge, and thirty days for simple assault, to run concurrently.

On April 25, 2017, Robinson filed an application for PCR challenging his 2009 guilty plea.[4] The circuit court initially dismissed the application by conditional order of dismissal. Robinson filed a reply, requesting a hearing; the circuit court granted the request and ordered a hearing. The circuit court held a hearing on April 15-17, 2019, to determine whether Robinson should be allowed to proceed with a full evidentiary hearing.

During the hearing, Robinson testified that shortly before the plea, plea counsel told him that he had reached a plea deal with the State pursuant to which Robinson would receive a sentence that "would not be any more than [what he received] at the jury trial," and that "the sentences would be run concurrent." When asked what he understood at the time of his plea regarding the two sets of charges, Robinson testified, "Basically, I pled based upon me serving [twenty-five] years. And if I didn't plea, they were saying they w[ere] going to give me a life sentence. So that's what made me take the plea for the [twenty-five] years ran in with the [twenty-five] years I was already serving." PCR counsel questioned Robinson further about the sentencing:

> Q: At that point, in terms of what you were going to get
> in exchange for your plea, it was your understanding that

---

[3] *Allen v. United States*, 164 U.S. 492 (1896).

[4] The State informed the PCR court that it could not obtain a copy of the guilty plea transcript because Robinson had not appealed his guilty plea and did not file this PCR action until 2017.

what was going to happen?  That two sets of charges were going to be run together?

A:  Correct.

Q:  And in—did they use the word "concurrent"?

A:  Yes, ma'am.

Q:  With regard to sentencing?

A:  Correct. Just sentencing.  That's all I'm—

Q:  But what—what else did they talk about that—that they were—that it was all going to be run together?  You tell me what words were used.

A:  It was explained to me that it was ran together.  And my understanding was that it was altogether, not separate, or anything like that.

Q:  Okay.

A:  That was my whole understanding of the plea.

Q:  And was it your understanding that as a result of that plea that you were not ever going to have to worry about getting more time for those charges . . . than you got on the charges that you were facing at the jury trial?

A:  Correct.  That was my whole reason for pleading.

Q:  . . . .  And was it your understanding that that meant that no matter what happened in the future . . . the sentence on the things you pleaded to in March of 2009 was never going to be longer than the sentence you got for the things you went to trial on?

A:  Correct.  That was the understanding I had.

Q: . . . . Did your lawyer ever explain to you that in terms of the actual judgments and sentences that they would remain separate legally, and that if you chose to appeal either . . . the jury trial or the guilty plea proceeding that you had to appeal them both?

A: No, ma'am. If I was aware of that, I would have never t[aken] the plea to begin with.

Robinson confirmed that as part of the plea negotiations, the State agreed to dismiss several pending charges. Robinson stated he believed law enforcement was trying to "clear the books" with these remaining charges. Robinson believed the State could not convict him of these charges because he "[n]ever heard of them" and stated that he was not worried about being convicted of those charges because he did not commit them. Robinson also represented that he was incarcerated at the time that most of the offenses were alleged to have been committed. Robinson further testified,

[S]erving [twenty-five] years was the purpose of me pleading, not because I felt like I was guilty. It was my back against the wall. . . . [Y]ou're telling me that if [I] don't plead, [I'm] going to trial and [I'm] looking at a life sentence. So with me being [nineteen] years old, the first thing [I'm] going to think is [I'm] going to get a life sentence.

Robinson also averred he was falsely accused of the offenses for which he was convicted.

Robinson agreed that his guilty plea was "entirely reliant upon [his] belief that [he] was not going to get any more time for those pleas than [he] got for the charges that [he had] gone to trial [for]" and that if he had not held that belief, he would not have pled guilty. He further testified that nothing in the legal advice his plea counsel gave him led him to understand "that the only thing overlapping about [the two] cases was the sentences." During cross-examination, Robinson acknowledged that even though he thought his trial charges merged with his plea charges, he did not list his plea charges in his application for PCR as to his trial charges.

Plea counsel testified he represented Robinson during his trial and the 2009 guilty plea hearing. Plea counsel testified he was able to negotiate a deal that would allow Robinson to receive concurrent time for the charges he was pleading to. Plea counsel noted he had not yet had a chance to obtain his file from the public defender's office prior to the hearing, but he recalled Robinson had more than twenty pending charges at the time of the plea. He stated there was a concern Robinson was eligible for a sentence of life without parole (LWOP) on the pending charges and the goal of pleading guilty to concurrent sentences was to reduce his exposure and eliminate, to the largest extent possible, the risk that he would be sentenced to LWOP. Plea counsel testified he would have told Robinson that his sentences for the guilty plea and trial convictions would be served at the same time because they were concurrent. He agreed he would have told Robinson that the guilty plea would not result in him serving any more time than he would serve for the trial convictions because the recommended sentence was for the same sentence he received for his trial convictions. Plea counsel agreed he had no recollection of telling him that "for any other purpose, if he wanted to appeal the jury trial, if he was doing a PCR, whatever, that they still were independent cases and had to be treated independently as far as anything he might file in the future."

On April 21, 2019, the circuit court issued an order vacating the conditional order of dismissal and finding Robinson was entitled to a full evidentiary hearing on the merits of his PCR allegations. The PCR court held an evidentiary hearing on January 22, 2020. The State and PCR counsel agreed that the transcripts from the April 15 and 17 hearing would be admitted as evidence for purposes of the evidentiary hearing. However, both PCR counsel and the State elicited additional testimony from Robinson and plea counsel.

Robinson agreed that "at least part of [his] motivation in taking t[he plea] deal was to avoid potential exposure to [an LWOP] sentence." He further agreed that because of his jury conviction, he was eligible for LWOP at the time he pled guilty, and he acknowledged the State was planning to seek LWOP if he did not plead guilty. Robinson confirmed that the State's intent to seek LWOP was a factor in deciding whether to plead guilty.

When asked what his understanding of pleading to the second set of charges would mean in relation to the sentence he received for his prior conviction, Robinson testified,

> The knowledge I had [was] that it was merged together.
> It was [to ru]n concurrent[ly]. That's all I knew as far as

the charges being together, concurrent. I didn't know anything about if I had got it reversed on down the line that I was going to be held accountable as I am now. I wasn't aware of that. And I wasn't informed of that.

Plea counsel testified Robinson was eligible for LWOP because of his January 2009 jury convictions and that prior to his March 2009 guilty plea, the State informed him that it planned to serve Robinson with notice of its intent to seek LWOP.

When asked if he told Robinson that his jury trial convictions and his guilty plea charges and sentences merged, plea counsel stated,

> As I testified . . . in April, I cannot remember specifically what I said to Mr. Robinson as it related to the relationship between the charges.
>
> . . . . [W]hat I can say is I did not tell him that charges to which he'd pled months after a guilty verdict that his appellate rights for those charges with the guilty pleas and his appellate rights . . . related to the jury convictions, that somehow they were all lumped in together and that an appeal on conviction from the jury trial somehow would also be an appeal on a guilty plea that he engaged in months later. I did not affirmatively represent that to him in any conversations we had.

On cross-examination, plea counsel further explained,

> My testimony was that I never told him that . . . . I would never have said that because that's not a correct statement of the law. The fact that my client was found guilty in a jury trial, that he pled months later, and the appeal related to the convictions for the jury trial somehow would be linked, that notion would have never occurred to me.

Plea counsel agreed that if he were to face similar circumstances in future representation, he would cover the issue with his client "from the standpoint of eliminating any confusion or possibility that . . . I'd be part of the litigation on this issue in the future."

The PCR court issued an order granting Robinson's application for PCR, finding plea counsel was deficient for failing to "fully advise [Robinson] concerning how a reversal on the judgments and sentences entered at his earlier jury trial might change the sentence for those offenses and thereby change the impact of the pleas he was considering entering."  The PCR court found Robinson's testimony to be credible and not inconsistent with plea counsel's testimony concerning the advice he gave Robinson.  The PCR court found plea counsel's insufficient advice "created [Robinson's] misunderstanding by not making it clear that if the jury trial judgments were overturned in any subsequent appeal, the guilty plea judgments and sentences would not be."  The PCR court found Robinson "unambiguously testified that the only reason he pleaded to these charges was [because] he believed his [plea] charges . . . were being completely merged with the charges the jury had found him guilty of and, therefore, stood no chance of hurting him in any[]way."  The PCR court stated plea counsel "should have recognized that his advice to [Robinson] . . . that his guilty pleas would not result in him serving more time than he would have to serve on the charges from his jury trial, was very much contingent on the outcome of any appeal [on which Robinson might be successful in the future]."  Finally, the PCR court found Robinson's guilty plea was not knowing and voluntary "inasmuch as they were the product of [p]lea [c]ounsel['s] deficient representation."  This appeal followed.

## ANALYSIS

The State argues the PCR court erred by finding plea counsel ineffective for failing to advise Robinson that if his trial convictions were ever overturned in any subsequent appeal, his guilty plea to separate charges would not be.  We reverse.

"Our standard of review in PCR cases depends on the specific issue before us.  We defer to a PCR court's findings of fact and will uphold them if there is evidence in the record to support them." *Smalls v. State*, 422 S.C. 174, 180, 810 S.E.2d 836, 839 (2018).  "We review questions of law de novo, with no deference to trial courts." *Id.* at 180-81, 810 S.E.2d at 839.  In evaluating PCR claims of ineffective assistance of counsel, courts apply the two-step analysis set forth *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Under *Strickland*, the applicant first "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  Next, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

> [T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  In the context of guilty pleas, the first half of the . . . test is nothing more than a restatement of the standard of attorney competence . . . .  The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

"[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the [range of competence demanded of attorneys in criminal cases].'"  *Id.* at 56-57 (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).  "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."  *Strickland*, 466 U.S. at 688.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  The prejudice inquiry "focuses on a defendant's decisionmaking, which may not turn solely on the likelihood of conviction after trial."  *Lee v. United States*, 582 U.S. 357, 367 (2017).  A PCR applicant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."  *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

We hold the PCR court erred by finding plea counsel rendered deficient performance and that Robinson was prejudiced by such deficiency.  First, counsel's advice was within the range of competence demanded of attorneys in criminal cases.  *See Hill*, 474 U.S. at 56-57 (stating a defendant challenging a guilty plea on grounds of ineffective assistance of counsel must show "the advice he received from counsel was not within the [range of competence demanded of attorneys in criminal cases]" (quoting *Tollett*, 411 U.S. at 267)).  We are mindful of our

standard of review on questions of fact. However, we find no evidence in the record supports a finding that plea counsel gave Robinson any advice that would have resulted in Robinson's belief that the charges he pled guilty to somehow "merged" with the separate charges of which a jury had convicted him after a trial. Rather, plea counsel testified he advised Robinson that his sentences would be concurrent such that he would not receive a greater sentence on his guilty plea charges than that he received at trial. Robinson was sentenced to twenty-five years at trial and he was sentenced to twenty-five years on his guilty plea charges, to be served concurrently. Thus, the sentences for the charges to which he pled guilty did not exceed the sentence he received on his trial charges. No evidence shows plea counsel advised Robinson that his trial charges and guilty plea charges merged with one another such that an appeal of one would affect the other. Rather, plea counsel testified he "would never have said that" because it was "not a correct statement of the law."

Further, we hold plea counsel had no duty to inform Robinson that the charges themselves were not "merged" such that if his trial convictions were ever overturned on appeal, that result would not also affect his plea charges. Robinson's trial charges arose from an incident that occurred on December 10, whereas his guilty plea charges arose from an incident that occurred on December 14 and involved different circumstances and different victims. The record contains no evidence that plea counsel had any knowledge that at the time Robinson entered his guilty plea, he believed the plea would cause those charges to merge with the prior convictions. Because plea counsel had no reason to suspect Robinson's mistaken belief, he had no duty to advise Robinson that if his trial convictions were ever overturned, the charges to which he was pleading guilty would not be automatically overturned also. *See Hill*, 474 U.S. at 56-57 ("[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the [range of competence demanded of attorneys in criminal cases].'" (quoting *Tollett*, 411 U.S. at 267)); *Strickland*, 466 U.S. at 688 ("[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."); *id.* at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). Thus, we conclude no evidence supports the PCR court's finding that plea counsel rendered deficient performance for failing to advise Robinson that the charges would not merge.

Next, we hold the PCR court erred by granting PCR because Robinson failed to show there was a reasonable probability that but for counsel's deficient performance, Robinson would not have pled guilty but would have insisted on going to trial. Plea counsel confirmed that Robinson's plea charges were charges for which the State could seek LWOP and that the State had indicated it intended to serve Robinson with notice of its intent to seek LWOP for the December 14 charges. Plea counsel testified the goal of pleading guilty with concurrent sentences was to reduce his client's exposure and eliminate "to the largest extent possible the possibility that he would be sentenced to [LWOP]." *See* S.C. Code Ann. § 17-25-45(A)(1)(a) (2003 & Supp. 2007) ("[U]pon a conviction for a most serious offense as defined by this section, a person must be sentenced to a term of imprisonment for life without the possibility of parole if that person has . . . one or more prior convictions for . . . a most serious offense . . . ."); *see also* S.C. Code Ann. § 17-25-45(C)(1) (Supp. 2007) (setting forth offenses that constitute a most serious offense and including armed robbery and ABWIK as most serious offenses). Robinson's trial charges and the charges to which he pled guilty occurred four days apart and involved different victims. Because he was convicted of armed robbery following his January 2009 trial, Robinson had one prior conviction for a most serious offense. Thus, the State was entitled to seek LWOP for the offenses to which Robinson pled guilty had he chosen to proceed to trial.

Robinson agreed he was eligible for LWOP at the time he pled guilty because of his jury trial conviction and he acknowledged the State was planning to seek LWOP if he did not plead guilty. He further testified that one of the reasons he pled guilty was to avoid exposure to a sentence of LWOP if he were to proceed with a trial on those charges. The PCR court's order acknowledges that Robinson "indicated that the only reason he pleaded to the charges before the Court [was] not because he was guilty, but because he was getting threatened with L[W]OP if he did not plead." Because Robinson's decision to enter a guilty plea was based in part on avoiding a sentence of LWOP, we hold Robinson failed to show that but for counsel's alleged deficient advice, he would not have pled guilty but would have insisted on going to trial. *See Padilla*, 559 U.S. at 372 (stating a petitioner seeking to challenge a guilty plea "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances"); *cf. Goss v. State*, 425 S.C. 101, 108, 820 S.E.2d 373, 376 (2018) ("When a factfinder evaluates the credibility of witnesses, the mental process employed often requires the credibility evaluations to be based upon a consideration of all the evidence, not simply the parts the factfinder chooses to see and hear first-hand.").

Moreover, the State's dismissal of Robinson's twenty-three *other* pending charges in exchange for his guilty plea further undermines his testimony that he would not have pled guilty had he not believed his trial charges and guilty plea charges had merged. In exchange for Robinson's guilty plea, the State agreed to dismiss twenty-three other pending charges against him. Robinson testified he was not concerned about these charges because he had never heard of them and he was not guilty of the charges. Each of the warrants that were included in the record for these pending charges indicates the officer obtained a written, sworn statement of a codefendant. We acknowledge the State had not yet obtained indictments for any of these pending charges, but nothing in the record suggests the State lacked evidence to prosecute them.

Further, by pleading guilty in exchange for the dismissal of these remaining charges, Robinson also avoided any possibility the State would seek a sentence of LWOP for those charges. The warrants for these charges were premised on incidents that occurred on several different dates, ranging from November 21, 2007, to December 10, 2007, and included charges of armed robbery, first-degree burglary, and ABWIK—charges that may have also exposed Robinson to a potential LWOP sentence were the State to pursue indictments on these charges. *See* § 17-25-45(C)(1) (setting forth offenses that constitute a most serious offense and including armed robbery, first-degree burglary, and ABWIK as most serious offenses). Based on our review of the applicable law at the time Robinson committed the alleged offenses, the State would have been free to seek a sentence of LWOP on any of the most serious offenses he was charged with committing on November 21, December 6, and December 8.[5] At the time of Robinson's alleged conduct in 2007, section 17-25-45(F) of the South Carolina Code (Supp. 2007) read:

---

[5] However, as to the pending charge for the alleged armed robbery that also occurred on December 10 (during an incident separate from the one for which Robinson was tried), section 17-25-50 of the South Carolina Code (Supp. 2007) would likely have prevented the State from seeking LWOP for that offense because it occurred on the same date as the offenses of which he was convicted at trial. *See* § 17-25-50 ("In determining the number of offenses for the purpose of imposition of sentence, the court shall treat as one offense any number of offenses which have been committed at times so closely connected in point of time that they may be considered as one offense, notwithstanding under the law they constitute separate and distinct offenses.").

For the purpose of determining a prior or previous conviction under this section and Section 17-25-50, a prior or previous conviction shall mean the defendant has been convicted of a most serious or serious offense, as may be applicable, *on a separate occasion, prior to the instant adjudication.* There is no requirement that the sentence for the prior or previous conviction must have been served or completed before a sentence of life without parole can be imposed under this section.

(emphasis added). The statute contains no requirement that the conduct, rather than the conviction, must have occurred prior to the subsequent conviction. *See also Bryant v. State*, 384 S.C. 525, 529-32, 683 S.E.2d 280, 282-83 (2009) (plurality opinion) (noting the legislature amended section 17-25-45(F) in 2006 and discussing the legislative history of section 17-25-45(F)). Thus, by pleading guilty and obtaining a dismissal of the remaining pending charges, Robinson also eliminated the possibility that the State would seek a sentence of LWOP on those charges.

## CONCLUSION

For the foregoing reasons, we hold the PCR court erred by finding counsel was ineffective. Accordingly, the circuit court's order granting PCR is

**REVERSED.**

**KONDUROS and MCDONALD, JJ., concur.**